**UNITED STATES of America,
Appellee,**

v.

**Harold McMILLAN, Appellant.**

**No. 74–1270.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Dec. 31, 1974.

Certiorari Denied April 14, 1975.

See 95 S.Ct. 1577.

Donald S. Eisenberg, Madison, Wis., for appellant.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Harold McMillan appeals from a judgment of conviction entered March 14, 1974, following a jury trial at which he was found guilty of distributing heroin in violation of 21 U.S.C. § 841(a).

The primary issue in this appeal is whether the District Judge[1] erred in admitting certain tape recordings and transcripts of these recordings into evidence at McMillan's trial. Other assignments of error include withholding favorable evidence, prejudicial statements at the trial and insufficiency of the evidence.

In an effort to decrease the volume of illicit drugs being sold in the Minneapolis area, federal and local narcotics agents enlisted one Beverly Johnson to purchase controlled substances and serve as a paid government informant. Between November 7 and November 12, 1973, a special agent of the Federal Drug Enforcement Administration tape recorded many of Johnson's telephone conversations by attaching a recording device to her telephone. Among the conversations recorded were several she had with Harold McMillan in which she arranged to purchase heroin from him.

On November 11, 1973, McMillan was observed entering the building at 940 Franklin Terrace, Minneapolis, Minnesota. He proceeded to apartment 108 where Beverly Johnson lived, stayed a few minutes and left. Shortly thereafter one of the agents entered the apartment through a rear door and discovered 25 bindles lying on the kitchen table. Later chemical analysis showed these bindles to contain heroin. On the following day, McMillan made two more visits to Johnson's apartment. At the first visit he was paid $230 for the heroin he had delivered the day before, and at the second he delivered another 23 bindles which also were proved to contain heroin.

I.

At trial the District Judge permitted the tape recordings of McMillan's conversations with Johnson to be played. Instead of giving transcripts of these conversations to the jury at the time the tapes were played, which the government had suggested and the defense objected to, the District Judge ordered the agent who had made the recordings and prepared the transcripts to read the transcript of each tape aloud to the jury immediately after the tape had been

1. The Honorable Earl R. Larson, United States District Judge for the District of Minnesota.

played. The defense objected to the playing of the tapes and contended that they were made in violation of McMillan's Fourth Amendment rights, were introduced without proper foundation and were highly prejudicial. The reading of the transcripts was objected to as cumulative.

On appeal McMillan asserts that Beverly Johnson lacked the capacity to give a valid consent to the recording of her telephone conversations with McMillan without his approval because she was a paid government informant,[2] that tape recordings of an informant's conversations with an accused party can only be used to corroborate the informant's testimony, and that no proper foundation was laid for the introduction of the tapes. In addition, he contends that if no proper foundation was laid for the introduction of the tapes, the District Judge erred in permitting the introduction of the transcripts. These contentions are without merit.

*Foundation*

■ It is now well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are electronically monitored by a government agent with the consent of the informant. *E. g.*, United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (opinion of White, J., in which the Chief Justice and Stewart and Blackmun, JJ. concurred); United States v. Bonanno, 487 F.2d 654 (2d Cir. 1973); United States v. Bishton, 150 U.S.App. D.C. 51, 463 F.2d 887 (1972); United States v. Quintana, 457 F.2d 874 (10th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); United States v. Holmes, 452 F.2d 249 (7th Cir. 1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479, 407 U.S. 909,

92 S.Ct. 2433, 32 L.Ed.2d 683 (1972); *cf.* United States v. Skillman, 442 F.2d 542 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

■ Similarly, the use of evidence obtained by such electronic monitoring is not limited to corroboration of the testimony of the informant. United States v. Bonanno, 487 F.2d 654 (2d Cir. 1973). Of course, a proper foundation must be laid for the introduction of the evidence. In Slatinsky v. Bailey, 330 F.2d 136 (8th Cir. 1964), we approved the formulation contained in United States v. McKeever, 169 F.Supp. 426, 430 (S.D.N.Y.1958), rev'd on other grounds, 271 F.2d 669 (2d Cir. 1959). Those requirements include a showing:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

McMillan asserts that items (3) and (6) were not met in this case.

■ It is sometimes necessary that both the informant and the recorder testify in order to meet this burden. It does not follow, however, that the party to the conversation must in each case testify that the recording was authentic and correct and must also identify the speakers. Agent O'Connor testified that

---

2. In a separate *pro se* statement, McMillan asserted that it was never determined at trial that Johnson had actually consented to the recording of her conversations. However, after considering the totality of the circumstances, it is impossible for us to conclude anything but that Ms. Johnson had consented.

See United States v. Bonanno, 487 F.2d 654, 658–659 (2d Cir. 1973) (it will normally suffice for the government to show that the informer went ahead with a call after knowing what the law enforcement officers were doing).

he heard the voice of Beverly Johnson at all times when he was making the recording, that that part of the conversation was accurate, and that immediately after the telephone calls were completed the tape was replayed by O'Connor in Johnson's presence to verify that the conversations had in fact been recorded and that the instruments were operating correctly. We think this testimony sufficiently establishes that the recordings were true and accurate.

■ "The standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." United States v. Rizzo, 492 F.2d 443 (2d Cir.), cert. denied, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974); *see* United States v. Bonanno, *supra,* 487 F.2d at 659; Proposed Federal Rules of Evidence 901(b)(5); McCormick, Evidence § 226 at 553–555 (Cleary ed. 1972). From the record in the instant case it is not clear whether Special Agent O'Connor's identification of McMillan's voice was based on another hearing of McMillan's voice or upon the circumstances which gave rise to the recording. However, "in view of the identity between the scenario arranged on the telephone and that subsequently enacted, the case would come within the principle of Van Riper v. United States, 13 F.2d 961, 968 (2d Cir.), cert. denied, 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926), that in some instances 'the substance of the communication may itself be enough to make prima facie proof.' " United States v. Bonanno, *supra,* 487 F.2d at 659. We therefore conclude that a proper foundation was laid for the introduction of the tapes.

### Use of Transcripts

The transcripts of the tape recordings were prepared by the government. Appellant objected to distributing copies to the jury. The District Court then permitted a government witness to read a transcript to the jury from the witness stand immediately following the playing of the related taped conversation to the jury. Appellant challenged this procedure only as cumulative. Appellant later objected to sending the tapes to the jury but allowed the transcripts to go without objection.

■ Appellant in his brief challenges the use of the transcripts only upon the assumption that the tapes were admitted without foundation and that the use of the transcripts under such circumstances merely compounded the error. Our holding that a proper foundation was laid for the tapes disposes of this contention. To the extent that appellant purported to challenge the accuracy of the transcripts, we think that claim of error was waived by appellant in failing to object to the transcripts going to the jury room.

■ Our holding does not constitute approval of the procedure followed at the trial. The best evidence of the conversation is the tape itself; the transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents. *Cf.* Fountain v. United States, 384 F.2d 624, 632 (5th Cir. 1967), cert. denied, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances in which it will be replayed or the need to identify the speakers, *see* United States v. Bryant, 480 F.2d 785, 790–791 (2d Cir. 1973); Fountain v. United States, *supra,* 384 F.2d at 632; United States v. Hall, 342 F.2d 849, 853 (4th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case this will not be prejudicially cumulative. United States v. Fountain, *supra,* 384 F.2d at 632. Transcripts should not ordinarily be read to the jury or given independent

weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference. Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *See generally* 17 Am.Jur.P.O.F. Tape Recordings as Evidence §§ 54–56 (1966).

## II.

After carefully considering each of McMillan's other assertions of error, we are satisfied that they fail to establish any proper ground for reversal, either singularly or cumulatively. We will deal with each of them briefly.

 McMillan contends that the government failed to disclose that its informant Beverly Johnson had concealed and used some of the heroin he had distributed to her and that this prejudiced his right to cross-examine Johnson and one of the narcotics agents who was involved in the case. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The record is to the contrary. Johnson stated on direct examination that she had concealed and used some of the heroin, and McMillan's attorney cross-examined both Johnson and the agent on this point. There was no prejudice. *See* United States v. Cole, 449 F.2d 194, 198 (8th Cir. 1971), cert. denied, 405 U.S. 931, 92 S.Ct. 991, 30 L.Ed.2d 806 (1972).

 McMillan contends that the District Court erred in refusing to strike the testimony of the government's chemist, Terry R. Gaston, on the ground that the man was not an expert at all. We have held on numerous occasions that the determination of the qualifications of an expert is a matter left to the discretion of the trial court. *E. g.*, United States v. Burden, 497 F.2d 385 (8th Cir. 1974); United States v. Cochran, 475 F.2d 1080, 1084 (8th Cir.), cert. denied,

414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); White v. United States, 399 F.2d 813, 819 (8th Cir. 1968). *See generally* McCormick, Evidence § 13 at 30 (Cleary ed. 1972). Gaston is a forensic chemist with the Drug Enforcement Administration. After examining the record which discloses his educational background and experience, we are convinced ·that the District Court did not abuse its discretion in allowing Gaston to testify as an expert. The weight of his testimony was properly left for the jury to determine. United States v. Burden, *supra*, 497 F.2d at 387.

We have examined the record and conclude that the remaining allegations of trial error are without substance, harmless or cured by the court's limiting instructions. Taking the evidence in the light most favorable to the government, as we must, the evidence of McMillan's guilt was substantial and we reject the challenge to its sufficiency.

Affirmed.