UNITED STATES of America, Appellee,

v.

**Leonard HASSELL, Appellant.**

UNITED STATES of America, Appellee,

v.

**Kenneth McINTOSH, Appellant.**

UNITED STATES of America, Appellee,

v.

**Robert McINTOSH, Appellant.**

**Nos. 76–1272, 76–1290 and 76–1303.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1976.

Decided Jan. 10, 1977.

Certiorari Denied March 7, 1977. See 97 S.Ct. 1338.

Paul C. Hetterman, St. Louis, Mo., for appellants; Robert A. Hampe and Stuart Cofman, St. Louis, Mo., on brief.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U.S. Atty., St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Leonard Hassell, Kenneth McIntosh, and Robert McIntosh appeal from judgments of conviction entered following a jury trial at which they were found guilty of various drug-related offenses.[1] The primary issue on this appeal is whether the District

---

1. Leonard Hassell was convicted of one count of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), and Kenneth McIntosh was convicted of two counts of distribution of heroin. Hassell, Kenneth McIntosh and Robert McIntosh were convicted of one count of conspiracy to distribute heroin, 21 U.S.C. §§ 841(a)(1) and 846. Each was sentenced to ten years of imprisonment on each count plus a three year special parole term, with each sentence to be served concurrently.

Court [2] erred in admitting into evidence certain hearsay statements by alleged coconspirators. Appellants also contend that a tape recording was admitted into evidence with insufficient foundation, and that the Court erred in permitting the jury to see transcripts of the tape recording.

The government's case in chief was based in large measure upon the testimony of Special Agent Vernon Ankton, who testified as to what he observed and what was said in his presence. He testified to the following facts: On October 1, 1975, Ankton informed appellant Hassell that he wanted to purchase some heroin. Ankton, Hassell, a woman named Dicie, and a female government informant then drove to the home of appellant Robert McIntosh. Ankton gave Hassell $300 which he took with him to the house. Kenneth McIntosh, nephew of Robert, answered the door and let Hassell in. Soon Hassell came out and informed Ankton that Kenneth was getting the package ready and would bring it out. Shortly thereafter Kenneth emerged from the house and spoke with Hassell. Hassell then told Ankton that Kenneth did not have enough heroin to fix up the package because the heroin was locked up and Robert's wife had left with the key. He returned Ankton's money.

Later that afternoon, Ankton, Hassell, and Dicie drove back to Robert McIntosh's home. Hassell took $325 from Ankton and went into the house. While they were alone in the car, Dicie told Ankton that Hassell had purchased heroin for other people before and that Kenneth would not "burn" him. Soon they saw appellant Robert McIntosh emerge from the house and drive away. After waiting in the car approximately fifty minutes, Ankton walked to the house. Kenneth McIntosh opened the door and told Ankton the package was almost ready and that Hassell would be down in about ten minutes. Ankton went back to the car and returned to the house

fifteen minutes later. This time Kenneth answered the door and informed Ankton that Hassell was on the telephone. A woman then came to the door and identified herself as Robert's wife. She told Ankton that Robert had left with the money to go pick up a package and take care of some business, and that he should have been back already. She further stated that if she had $300 she would give Ankton his money back, but that she did not have $300. She said she did not usually talk to people about narcotics, but that Ankton could come into the house and wait for Robert. Ankton refused, and the woman left the door, saying she was going to the telephone. She returned to the door and said Robert had called and would be home in a few minutes.

Ankton returned to the car for fifteen minutes and then came back to the house. Hassell and Kenneth McIntosh came to the door. Hassell said Robert had just called and should be home soon. Ankton and Dicie then went into the house with Hassell and Kenneth. Soon the door opened and Ankton heard someone enter the house. Kenneth said, "Robert's back." Ankton looked outside and saw the car Robert had left in earlier. Shortly thereafter Kenneth gave Ankton a package of heroin.

Approximately one month later, on November 7, 1975, Agent Ankton purchased another package of heroin from Kenneth McIntosh. Appellants were thereafter indicted and convicted in a jury trial.

## I

■ Appellants contend that it was prejudicial error to admit the hearsay statements of Mrs. Robert McIntosh and Dicie. They contend that the government failed to establish the declarants' participation in the conspiracy by independent evidence, and that their statements were therefore not admissible as exceptions to the hearsay rule.[3]

---

2. The Honorable John F. Nangle, United States District Court for the Eastern District of Missouri.

3. Under Fed.R.Evid. 801(d)(2)(E), a statement by a coconspirator of a defendant during the course and in furtherance of the conspiracy is

■■ In order for a statement by a co-conspirator to be admissible against other conspirators, it must first be established that a conspiracy existed and that at the time the statement was made the declarant had joined the conspiracy by express agreement to cooperate or by willful participation in it. *See United States v. Rich*, 518 F.2d 980, 984 (8th Cir. 1975), *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976); *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). *See also* Fed.R.Evid. 801(d)(2)(E). Such participation may be established not only by evidence of acts or conduct of the declarant, but also by statements which are made in furtherance of the conspiracy and hence are in the nature of verbal acts. *See United States v. Overshon, supra*, 494 F.2d at 898; *United States v. Burke*, 495 F.2d 1226, 1232 (5th Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

■ Proof of the existence of a conspiracy is often a complex matter in terms of court presentation. A witness frequently has testimony which helps to establish the existence of a conspiracy and also evidence which may be used against particular alleged coconspirators once their participation has been established. The District Court has broad discretion to permit the government to present its evidence against individual conspirators in a logical order upon its representation that it will establish through subsequent evidence the requisite participation. *See United States v. Williams*, 529 F.2d 557, 559 (8th Cir.), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2232, 48 L.Ed.2d 834 (1976); *United States v. Kelley*, 526 F.2d 615, 618 (8th Cir. 1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976); *Brinlee v. United States*, 496 F.2d 351, 354 (8th Cir.), *cert. denied*, 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974).

Failure to so tie in a named conspirator will result in reversal.[4]

### A

We review first the independent evidence against Robert McIntosh. On October 1, he was seen leaving his house shortly after Hassell had entered the house with $325 to make a purchase of heroin. Earlier attempts by Hassell and Agent Ankton to obtain heroin at Robert's home through Kenneth McIntosh had failed. Ankton was admitted to the house, but he was unable to complete the purchase. Robert was observed returning shortly after 7 p. m., and at 7:30 p. m. Kenneth was able to deliver the heroin to Ankton and Hassell.

■ The testimony of Ankton, if believed, was sufficient to establish that Hassell, Kenneth McIntosh and Robert McIntosh were engaged in a conspiracy to distribute heroin. The real dispute is whether the government established that Dicie and Mrs. McIntosh had also joined the conspiracy; if they had joined the conspiracy, their damaging statements against Robert, Kenneth and Hassell were properly admitted as statements of coconspirators. Fed.R.Evid. 801(d)(2)(E).

■ Once the existence of a conspiracy has been established by satisfactory proof, a particular individual's participation may be established by evidence that otherwise seems light. *United States v. Verdoorn*, 528 F.2d 103, 105 (8th Cir. 1976); *United States v. Baumgarten*, 517 F.2d 1020, 1026 (8th Cir.), *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975); *United States v. Overshon, supra*, 494 F.2d at 896; *United States v. Hutchinson*, 488 F.2d 484, 490 (8th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). Such proof may be established by circumstantial

---

not hearsay. The semantical distinction between a statement which is not hearsay and a statement which is an exception to the hearsay rule is not outcome determinative in this case.

4. While the government asserts that this issue was waived for failure to object to the hearsay

testimony, our reading of the record convinces us that the District Court, in preliminary proceedings, granted appellants a continuing objection to such statements, and we review this case accordingly.

evidence. *United States v. Overshon, supra,* 494 F.2d at 895–96; *Isaacs v. United States,* 301 F.2d 706, 725 (8th Cir.), *cert. denied,* 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

■ We have little difficulty in concluding that there was sufficient evidence to support the District Court's ruling permitting use of Dicie's statements. First, she was present when the first arrangements were made to go from Hassell's house to Robert's house to buy heroin. Dicie accompanied Ankton and Hassell on both trips, and she was present in Robert's house when the purchase was made. Mere association with those engaged in an illegal enterprise does not create an inference of guilt, *United States v. Frol,* 518 F.2d 1134, 1137 (8th Cir. 1975); *United States v. Quintana,* 508 F.2d 867, 880 (7th Cir. 1975), nor does mere knowledge of the existence of a conspiracy or even acquiescence therein alone constitute a person a conspirator. There must be some element of cooperation or agreement to cooperate. *See United States v. Amato,* 495 F.2d 545, 550 (5th Cir.), *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 286 (1974); *Miller v. United States,* 382 F.2d 583, 587 (9th Cir. 1967), *cert. denied,* 390 U.S. 984, 88 S.Ct. 1108, 19 L.Ed.2d 1285, *rehearing denied,* 391 U.S. 971, 88 S.Ct. 2037, 20 L.Ed.2d 888 (1968). When Ankton became anxious after the purchase was successively delayed, Dicie reassured him by saying that Hassell had purchased heroin for other people and that Kenneth would not "burn" him. This statement was a verbal act in furtherance of the conspiracy and we hold that, taken with other circumstantial evidence of Dicie's willful participation, it was enough to constitute her a conspirator and make her statements to Ankton admissible against the others. *See United States v. Burke, supra,* 495 F.2d at 1232. *See also United States v. Williams, supra,* 529 F.2d at 559; *United States v. Wixom,* 529 F.2d 217, 220 (8th Cir. 1976).[5]

### B

■ While the evidence of Mrs. McIntosh's participation in the conspiracy is not as strong as that of Dicie's participation, we think upon the same legal analysis that it was sufficient for her statements to be used against the other conspirators. She, too, reassured Ankton by urging him to come inside the house and telling him that she was "not going to do anything to [him]." Her statements to Ankton that she normally did not talk to people about narcotics and that she would return his $300 if she could were statements which, although arguably equivocal, were circumstantial evidence from which a jury could infer knowing cooperation in the conspiracy. *See Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Whether Mrs. McIntosh was a mindless hostess or a knowing participant was for the jury to decide, once the likelihood of illicit association with the named conspirators had been shown. *See United States v. Sanders,* 463 F.2d 1086, 1088 (8th Cir. 1972). We hold that the District Court did not err in admitting into evidence her statement that Robert had left to pick up the heroin. The credibility of the statement was for the jury to determine after it had independently found that Mrs. McIntosh was at that time a member of the conspiracy. *United States v. Sanders, supra,* 463 F.2d at 1088.

### II

Appellant Hassell took the stand and testified that his role was merely assisting the government informant in a scheme to "rip off" her boyfriend, whom Hassell knew as "Vernon" (Special Agent Vernon Ankton). Hassell testified that the informant asked him to pretend to locate heroin for Ankton, with whom she was angry; actually the substance to be purchased was not to contain heroin. He then acted out the charade of going to McIntosh's house, obtaining the

---

5. The Court properly instructed the jury that before such statements could be used against other conspirators it must first be established that a conspiracy existed and that the declarant had joined it as a conspirator. No objection to the instructions is preserved on appeal.

package and delivering it to Ankton. It was thus his defense that he did not knowingly distribute heroin.

In rebuttal, the government, over appellants' objection, was allowed to introduce evidence of a tape recording of a telephone call placed by the informant to Hassell's home from D.E.A. headquarters on October 1, 1975, in which she and Hassell made arrangements for the sale of a "T" of heroin.[6]

Hassell contends he was prejudiced by this evidence because it rebutted his charade defense. He contends it should not have been received in evidence because the proper foundation had not been laid by the government. Specifically, he asserts that (1) the authenticity of the tape was not established, and (2) the identity of Hassell as the person receiving the call was not proven. *See United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975).[7]

*Authenticity*

 Agent Fergus, who made the recording, testified that the recording was made in his office on a standard cassette tape by means of a Sony Dictaphone that was functioning and had been used previously to record telephone conversations.

While he did not hear Hassell's part of the conversation, he testified that the informant's part was as he remembered hearing it. The tape was not altered or modified in any way. We think the testimony of Agent Fergus was sufficient under these circumstances to establish the *prima facie* authenticity and correctness of the tape.[8]

*Identity*

In contrast to the situation in *United States v. McMillan, supra*, the testifying agent had never heard Hassell speak on the telephone and could not identify the voice on the tape as that of Hassell. No voice exemplars were offered in evidence.

 On the other hand, the circumstances of this case are such that it could reasonably be inferred that Hassell was indeed the person whose conversation with the informant had been recorded, and therefore Judge Nangle did not err in submitting this to the jury. First, Hassell himself admitted having a telephone conversation with the informant on the morning of October 1. Hassell also admitted that he talked to the informant about the price of a "T" being $300 and the price of half a "T" being $150. (He contended this was part of the prearranged charade.) Second, in the taped conversation, Hassell expressed a willingness to obtain a "T" of heroin for $300.[9] The informant asked him not to

---

6. A "T" is a quantity retailing at about $300.

7. In *McMillan*, we set forth the required showing to establish a proper foundation for the introduction of recorded telephone conversations:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

508 F.2d at 104.

8. In *United States v. McMillan, supra*, the agent played back the tape to the informant, who confirmed the accuracy of the recording of the entire conversation. This is a desirable precaution, but failure to do so here was not fatal to the required proof. In *United States v. Starks*, 515 F.2d 112 (3rd Cir. 1975), cited by appellants, there was uncertainty on the part of the authenticating witness regarding whether the tape that was played in court was the original or a duplicate that he acknowledged had been made subsequent to the taping. No such uncertainty was present in this case.

9. The following is from the transcript of the taped conversation (the informant's code number was SL250021):

HASSELL: Yeah
SL250021: Hey Leonard
HASSELL: Yeah
SL250021: This is [the informant], hey I've got my thing O.K.?

leave and Hassell said "I'm not goin' nowhere." That same day the informant and Ankton met Dicie and Hassell at Hassell's house, where Hassell appeared to call Kenneth McIntosh, after which all four drove to the McIntosh house, where the events previously described took place. In these circumstances, the similarity between what was arranged on the telephone and what subsequently occurred, with Hassell participating, was sufficient circumstantial evidence that the other voice on the tape was Hassell's to provide a foundation for admission of the tape into evidence. *See United States v. McMillan, supra,* 508 F.2d at 105; *United States v. Bonnano,* 487 F.2d 654, 659 (2d Cir. 1973); *Van Riper v. United States,* 13 F.2d 961, 968 (2d Cir.), *cert. denied,* 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926).[10]

The judgments of conviction are affirmed.

HASSELL: Huh?
SL250021: I got the money
HASSELL: Uh huh
SL250021: I'm waiting for my ride to come pick me up and then I'm gonna be over later
HASSELL: O.K.
SL250021: Listen, I got like a bill to pay
HASSELL: Uh huh
SL250021: I can get a "T" with that?
HASSELL: A "T"?
SL250021: (Unintelligible)
HASSELL: You can get a half
SL250021: How much does it take?
HASSELL: Three
SL250021: Three bills
HASSELL: Uh huh
SL250021: So for what a one or one fifty I could get a half a "T".

HASSELL: Yeah
SL250021: O.K., anyway don't cut out anyway
HASSELL: I'm not goin' nowhere.
SL250021: All right
HASSELL: O.K. baby
SL250021: See you later
HASSELL: O.K.

**10.** Appellants also contend the use of a transcript compounded the error. The transcript was shown to the jury with limiting instructions which told the jury that the tapes themselves were decisive of what was said. This narrow use conformed to our requirements in *United States v. McMillan, supra,* 508 F.2d at 105. ·