**Donald E. DURNS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 77–1163.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1977.

Decided Sept. 14, 1977.

Certiorari Denied Nov. 14, 1977.
See 98 S.Ct. 490.

David F. Williams, Kansas City, Mo., made argument, filed appearance and brief for appellant.

J. Whitfield Moody, First Asst. U. S. Atty., Kansas City, Mo. (argued and filed appearance), and Bert C. Hurn, U. S. Atty. (former), Kansas City, Mo., on brief for appellee.

Before STEPHENSON and WEBSTER, Circuit Judges, and BENSON, District Judge.*

BENSON, District Judge:

Donald E. Durns appeals from a judgment of conviction for violation of 18 U.S.C. § 1201, the federal kidnapping statute. He contends the trial court erred:

(1) in denying his motion for judgment of acquittal on grounds of insufficiency of the evidence to sustain the conviction for the offense charged;

(2) in failing to give the jury a requested lesser included offense instruction, and in failing to give an instruction on identity in the form requested;

(3) in admitting into evidence a tape recording of a telephone conversation and allowing the recording to be played to the jury;

(4) in admitting into evidence a revolver, a knife and certain articles of clothing;

(5) in admitting into evidence testimony relating to a prior act of the defendant similar to the offense charged.

A fair construction of appellant's specifications of error reveals that all, except the alleged error in failing to instruct on lesser included offense, relate to the issue of identity.

## I. Facts.

The indictment under which appellant was convicted arose out of a series of events beginning on July 8, 1976. Around noon on that day, Ethel M. Tanquary of Overland Park, Kansas, parked her car near the Ward Parkway Shopping Center in Kansas City, Missouri. As she was getting out of her automobile, a man forced his way into the car, declaring that he was armed with a knife and a gun and announced a robbery.[1] He took control of the car and drove, with Mrs. Tanquary in the car, several miles south to a gravel road, where he stopped to search Mrs. Tanquary's purse and remove rings from her fingers. Mrs. Tanquary signed a blank check for her abductor, who then placed tape over her eyes and tied her hands and feet.

From the gravel road the abductor drove to the Overland Park State Bank on Metcalf, located in Kansas, and attempted to cash the check signed by Mrs. Tanquary. The teller at the drive-in window of the bank refused to cash the check because of the amount.[2] From the Overland Park State Bank the abductor drove back to the Ward Parkway Shopping Center, where he transferred his victim to another automobile. From the Ward Parkway Shopping Center he drove to an apartment in Kansas City, Missouri, where Mrs. Tanquary was held captive.

While Mrs. Tanquary was being held at the apartment, negotiations for her release were conducted between her abductor and her son, Edward Tanquary. Mr. Tanquary was first contacted at approximately 12:45 P.M. on July 8, the day his mother was kidnapped. At that time he was told where

* The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. Although the individual announced that he was armed, Mrs. Tanquary did not see a weapon.

2. Under bank policy, checks for amounts over $500 could not be cashed at drive-up windows. The abductor in this case had filled in the amount of $12,000 on the signed check after questioning Mrs. Tanquary as to an amount for which she could write a check.

his mother's car was located, and was instructed to get together $22,000 cash in tens, twenties and fifties. The caller informed Mr. Tanquary that he would contact him again the following day at approximately 5:00 P.M. with further instructions.

After the initial phone conversation, Mr. Tanquary contacted his attorney, who in turn notified the Overland Park Police and the Federal Bureau of Investigation. Tanquary assembled the ransom money as instructed, and with two agents of the F.B.I. awaited further word from the caller at his mother's apartment. With Tanquary's permission, one of the F.B.I. agents installed a listening and recording device on the phone at his mother's apartment.

The next day, July 9, at approximately 5:00 P.M., Mr. Tanquary received instructions over the phone telling him where and when to drop the ransom money. The drop was made as instructed, and Mrs. Tanquary was released unharmed in Kansas City, Missouri, at approximately 8:30 P.M. on July 9. Around midnight that night, Appellant Durns was arrested at his apartment, and in a search of his person arresting authorities found a quantity of the ransom money, a knife and a wallet containing identification of Donald E. Durns.

A search of Durns' apartment [3] on July 10 turned up approximately $20,000 in ransom money as well as some bindings and tape used to restrain Mrs. Tanquary during her stay in the apartment, and a paper cup with lipstick smears later identified as having come from Mrs. Tanquary. The same day, July 10, the F.B.I. also recovered from Shirley Nicholi, an ex-girlfriend of Durns, a ring identified by Mrs. Tanquary as one taken from her during the kidnapping, a revolver and a quantity of the ransom money. Shirley Nicholi testified at trial that

these items were given to her by Durns, although she was unable to identify the weapon.[4] A 1970 white over blue Dodge automobile was also recovered from behind Shirley Nicholi's residence, which was identified at trial as the one used in the kidnapping.

At trial, Mrs. Tanquary described her abductor in general terms as a white man between 45 and 50 years old, 5 feet 10 or 11 inches tall, weighing approximately 185 pounds, clean shaven, with dark hair, graying at the temples, and wearing dark rimmed glasses. She was unable to positively identify Durns as her abductor.

Testimony at trial included that of Janet Renick, who described an incident which occurred on June 28, 1976. Mrs. Renick testified that as she approached her car after shopping at the Prairie Village Shopping Center in Prairie Village, Kansas, an individual whom she identified as Durns was seated in a white over blue Dodge with a license number matching that of the Dodge found behind Shirley Nicholi's residence. The individual got out of his car, grabbed Mrs. Renick, held a gun to her head and announced a kidnapping. Mrs. Renick struggled with her assailant and was able to break free. Her assailant panicked, returned to his car and fled the scene.

## II. Identity.

Appellant concedes, and the record is clear, that the statutory elements to establish the crime of kidnapping under 18 U.S.C. § 1201 were proven.[5] Appellant's argument is that the evidence is insufficient to establish that *he* committed the act.

On appellate review of the sufficiency of the evidence, the court must view

---

3. Durns rented the apartment using the alias William Douglas, the same name he initially gave arresting officers when they apprehended him on July 9, 1976.

4. The revolver was later identified by an F.B.I. agent as being the weapon he obtained from Shirley Nicholi on July 10, 1976.

5. The elements are:
   (1) interstate transportation of the victim;

(2) lack of consent;
(3) holding for ransom, reward or otherwise;
(4) the doing of such acts knowingly and willfully.
*See United States v. Johnson,* 514 F.2d 92, 95 (5th Cir.), *cert. denied,* 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975), *rehearing denied,* 424 U.S. 935, 96 S.Ct. 1152, 47 L.Ed.2d 344 (1976); *Hattaway v. United States,* 399 F.2d 431, 433 (5th Cir. 1968).

the evidence in the light most favorable to the verdict rendered. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It must accept as established any and all reasonable inferences from the evidence that tend to support the jury's verdict. *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 878, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). The evidence need not "exclude every reasonable hypothesis except that of guilt [; it is enough] that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). Furthermore, because circumstantial evidence is intrinsically as probative as direct evidence, *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the same standard applies where a conviction rests entirely on circumstantial evidence. *United States v. Carlson,* 547 F.2d 1346, 1360 (8th Cir. 1976).

The following circumstantial evidence presented by the prosecution at trial, when viewed under the applicable standards, is clearly sufficient to sustain the finding by the jury that it was Durns who committed the act:

(a) The vehicle used in the kidnapping, a 1970 Dodge, was owned by an ex-girlfriend of defendant, and the car was in Durns' possession during the period in which the kidnapping took place.

(b) The apartment in which the kidnap victim was held for nearly two days was leased to Durns.

(c) The bulk of the ransom money was recovered from Durns' apartment; part of the ransom money was recovered from Durns' person the night of the ransom transfer, and part was recovered the day following the transfer from his ex-girlfriend, Shir-

ley Nicholi, the owner of the 1970 Dodge.

(d) The ring taken from the kidnap victim, a revolver found under the seat of the Dodge, a part of the ransom money, and the Dodge automobile were turned over to Shirley Nicholi by Durns.

(e) Durns was identified by a bank teller as the man who attempted to cash a $12,000 check in the drive-up window of Overland Park State Bank on July 8, 1976.

Our holding that the foregoing evidence relating to the issue of identity is sufficient to sustain the jury's determination on that issue, taken together with appellant's concession that the elements of the crime had been proven, renders the appellant's remaining specifications of error relating to identity, specifically 3, 4 and 5 as set out in this opinion, somewhat moot on that issue. We therefore need only consider whether admitting the evidence in question in those specifications was error, and, if error, whether it was prejudicial. *United States v. Bartlett,* 449 F.2d 700, 706 (8th Cir. 1971), *cert. denied,* 405 U.S. 932, 92 S.Ct. 990, 30 L.Ed.2d 808 (1972); *Lowe v. United States,* 389 F.2d 108, 112 (8th Cir.), *cert. denied,* 392 U.S. 912, 88 S.Ct. 2072, 20 L.Ed.2d 1371 (1968).

### III. Tape Recording.

The telephone conversation recorded on tape and played to the jury was the July 9 call from the kidnapper to Edward Tanquary, giving him instructions for the ransom drop. Appellant challenges the admissibility of the recording, alleging the caller was not identified. He bases his challenge on *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), wherein this Court set out the foundational requirements for the admission of evidence obtained by electronic monitoring.[6] Appellant

---

**6.** The *McMillan* requirements are:
(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.
(3) That the recording is authentic and correct.

concedes that six of the seven foundational requirements of *McMillan* were met, but contends that, because the evidence at trial was not sufficient to identify the speaker, the recording failed to qualify under the final *McMillan* requirement, and was thus not admissible. Durns claims that admission of the tape into evidence under these circumstances violated his Fourth Amendment right to be free from unreasonable searches and seizures and his Fifth Amendment right to due process of law. Appellant's claims are without merit.

■ In *McMillan*, this Court said:
It is now well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are electronically monitored by a government agent with the consent of the informant.

508 F.2d at 104 (citations omitted). It follows that an abductor, holding his victim for ransom, has not had his Fourth Amendment rights violated when his communication with the party who is to pay the ransom is electronically recorded by a government agent with the consent of that party.

■ Durns' Fifth Amendment claim goes to the heart of the *McMillan* foundational requirements, the purpose of which is to insure that only competent and reliable tape recording evidence adverse to an accused is allowed to go before the trier of fact. These requirements do not, however, exist *in vacuo;* they become meaningful only when viewed in light of the facts of a specific case.

■ In the case at bar, a call was made by Mrs. Tanquary's abductor to her son shortly after she was kidnapped. The son was told where he could find his mother's car, and that her driver's license, the car

keys and a safety deposit box key were under a floor mat inside the car. He was also told he would be contacted the following day at approximately five o'clock with instructions for transfer of the ransom money. At about five o'clock the next day the son received another telephone call from the abductor, this time at his mother's apartment. His mother was put "on the line" for a few moments; she stated she was all right and that Tanquary, her son, should do exactly as her abductor said. The abductor then hung up the phone after stating he would call back within five minutes. Approximately thirty seconds later he called back with instructions to leave the ransom money at a certain spot at a specific time. About ten minutes after the money was delivered as instructed, it was picked up, and a little over an hour later Mrs. Tanquary was released. In these circumstances, and especially in light of the similarity between what was arranged on the telephone and what subsequently occurred, *United States v. Hassell,* 547 F.2d 1048, 1054–55 (8th Cir. 1977), we conclude there was more than sufficient evidence to identify the caller as Ethel Tanquary's abductor under the *McMillan* test. *United States v. McMillan,* 508 F.2d at 105; *United States v. Bonanno,* 487 F.2d 654, 659 (2d Cir. 1973); *Van Riper v. United States,* 13 F.2d 961, 968 (2d Cir.), *cert. denied,* 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926). The tape recording met the *McMillan* requirements in every respect.

Our conclusion is based on the purpose for which the tape recording evidence was offered. Government counsel, in response to defense counsel's objection at trial, stated that the purpose of the offer of the tape recording was (1) to introduce evidence of a holding "for ransom or reward," one of the elements of the offense of kidnapping which the prosecution was required to prove beyond a reasonable doubt, and (2) to

---

(4) That changes, additions or deletions have not been made in the recording.
(5) That the recording has been preserved in a manner that is shown to the court.
(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.
508 F.2d at 104.

show the means by which this particular crime of kidnapping for ransom was committed. The decision of the trial court to admit the offered evidence on this basis was correct.

■ Durns raises an additional issue of prejudice with respect to the tape recording evidence; in substance, he argues that the jury was allowed by the court's ruling to speculate as to whether he, Durns, was the "other party on the line." However, the trial judge properly cautioned the jury prior to the playing of the tape as to the purpose of its introduction and as to the proper scope of the jury's consideration of it.[7] We find this assertion of prejudice without merit.

## IV. Evidence of Weapons and Clothing.

The kidnap victim, Ethel Tanquary, testified that at the time of her abduction she was told by her abductor that he had a knife and a gun and that he would use them if he had to; she further testified that an object was pressed against her side which she was told was a gun, a portion of which she saw and described at trial as being gold in color. When Durns was arrested the night Mrs. Tanquary was released, a knife with a brass end was taken from his person. A revolver, fully loaded, was recovered from his ex-girlfriend, Shirley Nicholi, who testified that at the direction of Durns she took the gun out of the Dodge automobile driven by Durns on the night of July 9, 1976.

■ We conclude both weapons were sufficiently identified and linked to defendant to have warranted their admission into evidence. *Caldwell v. United States,* 338 F.2d 385, 390 (8th Cir. 1964), *cert. denied,* 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277 (1965).

■ Appellant claims he was prejudiced by the admission in evidence of various items of clothing either worn by him at the time of his arrest or taken from his apartment, but as to those items he has wholly failed to carry his burden to demonstrate prejudicial error. *See United States v. Bartlett,* 449 F.2d at 706, and *Lowe v. United States,* 389 F.2d at 112.

## IV. Evidence of Other Crimes.

One Janet Renick was permitted to testify at trial, over objection, that on June 28, 1976, just ten days prior to the Tanquary kidnapping, Durns attempted unsuccessfully to abduct her in a manner similar to that employed in abducting Mrs. Tanquary.

■ Evidence of other criminal conduct is inadmissible unless it is relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Ev. 404(b).

> It was not an abuse of discretion for the court to admit relevant evidence of the essential issue of motive and intent unless the court found that its probative value was "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403.

*United States v. Adcock,* 558 F.2d 397 (8th Cir. 1977). *See also United States v. Maestas,* 554 F.2d 834 (8th Cir. 1977).

■ The thrust of Durns' defense at trial and the thrust of his appeal in this Court was on the issue of identity. The other crime evidence was relevant to that issue. On appeal Durns does not raise an issue of its relevancy. He does argue, as he did to the trial court, that it was "highly prejudicial and that its probative worth was far outweighed by its probable prejudicial impact." The trial court overruled his objections and did not find a danger of unfair prejudice outweighing its probative value. We hold the admission of the evidence was not error.

---

7. Rule 105, Fed.R.Ev., provides as follows:
   When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.
   The limiting instruction in this case was given by the court *sua sponte.*

## V. Jury Instructions.

Appellant's remaining specification of error relates to jury instructions. His principal contention is that a violation of 18 U.S.C. § 1201, the kidnapping statute, necessarily encompasses a violation of 18 U.S.C. § 1202, which prohibits the receipt, possession or disposition of ransom money.[8] Therefore, he argues, the jury should have been instructed on § 1202 as a lesser included offense[9] and the provisions of § 1202 should have been set out in the instructions. He also asserts as error the court's refusal to give a portion of defendant's proposed instruction on the issue of identification.

### a. Lesser included offense.

In *Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), the Supreme Court held that a lesser included offense charge is proper where the charged greater offense upon which an accused is tried requires the jury to find an additional disputed element which is not required for conviction of the lesser included offense. *Id.* at 350, 85 S.Ct. 1004. This principle was the basis for the test set forth in *United States v. Thompson,* 492 F.2d 359 (8th Cir. 1974), in which this Court held that in order for a defendant to be entitled to a lesser included offense instruction, it must appear that

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof of the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality . . . ..

492 F.2d at 362 (emphasis deleted). *See also United States v. Klugman,* 506 F.2d 1378 (8th Cir. 1974).

The indictment in this case charged defendant with having willfully and knowingly transported in interstate commerce Ethel M. Tanquary, who had theretofore been unlawfully seized, kidnapped and carried away and held by defendant for the purpose of ransom, in violation of 18 U.S.C. § 1201. Establishing a violation of § 1202 requires proof of a knowing receipt, possession or disposition of money or property which was delivered as ransom or reward, elements that are clearly not identical to any of the elements of a § 1201 kidnapping offense. The trial court was correct in refusing to instruct on § 1202 as a lesser included offense.

### b. Identification.

The trial court charged the jury quite exhaustively on the issue of identification, utilizing most of defendant's proposed instruction, which was based on *United States v. Telfaire,* 152 U.S.App.D.C. 146, 152–153, 469 F.2d 552, 558–59 (1972). However, the court deleted the first and last paragraphs of the *Telfaire* model instruction, and Durns challenges the omission of these paragraphs on appeal.

This Court recently discussed the circumstances in which a jury should be instructed on the issue of identification along the lines of the *Telfaire* instruction. In *United States v. Dodge,* 538 F.2d 770 (8th Cir. 1976), it stated that

> [a]lthough we do not specifically adopt the *Telfaire* model instruction today, we will view with grave concern the failure to give specific and detailed instructions on identification in future cases *where identification of the defendant is based*

---

**8.** The essential elements of 18 U.S.C. § 1202 are:

(1) receipt, possession or disposition of money or property,

(2) which was delivered as a ransom or reward,

(3) in connection with a kidnapping under 18 U.S.C. § 1201, and

(4) knowledge that the money or property so received, possessed or disposed of had been delivered as ransom or reward.

**9.** The maximum penalty provided for violation of 18 U.S.C. § 1201 is life imprisonment, while the maximum penalty for violating 18 U.S.C. § 1202 is $10,000 fine or ten years imprisonment, or both.

*solely or substantially on eyewitness testimony.*

*Id.* at 784 (emphasis added). The focus of this Court's inquiry in *Dodge* was on the situation where there is little or "no evidence of identification except eyewitness testimony." *Id.*

As noted previously, there was substantial circumstantial evidence in this case, other than eyewitness testimony, identifying Durns as the criminal actor. This case is not one in which the identification of the defendant was based solely or substantially on eyewitness testimony. The court's instruction on identification was clearly adequate.

The judgment of conviction is affirmed.