**UNITED STATES of America, Appellee,**

v.

**Richard GORDON, Appellant.**

No. 81–2375.

United States Court of Appeals,
Eighth Circuit.

Submitted July 15, 1982.

Filed Sept. 9, 1982.

London, Greenberg & Fleming, Norman S. London, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U. S. Atty., St. Louis, Mo., Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HEANEY and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

Richard Gordon was charged in a two count indictment with distribution of cocaine and with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The indictment named Allan Solomon as a co-conspirator. Gordon was tried separately and a jury returned guilty verdicts on both counts. The district judge, the Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri presiding, sentenced Gordon to concurrent terms of six years, to be followed by a special parole term of three years. Gordon appeals, contending that the trial court erred in (1) not suppressing tape recordings and transcripts of them; and (2) not admitting a polygraph test. It is urged as well that the prosecutor created reversible error by making improper statements in closing argument. We affirm the conviction.

A paid government informant, Peter Sciuto, testified that during June 1981 he used a recorder attached to his telephone to record telephone conversations between himself and Solomon, as well as a cassette recorder on his person to record in-person conversations.

On June 3, 1981, Sciuto discussed the purchase of cocaine with Solomon, who indicated he was currently having problems and that he was "hot." At a later meeting that day, Solomon introduced the defendant Gordon to Sciuto. The next day, during a telephone conversation, Sciuto asked Gordon if Solomon "got a lot of heat or something." Gordon responded that he had, and for that reason Solomon would not be involved and that Gordon would handle matters because he was not "warm." That day the defendant and Sciuto met at a restaurant. Sciuto asked how much the cocaine would cost. Gordon responded that it would cost $2,150 an ounce, but the price would be less if Sciuto would buy a pound or more. On June 10, the defendant sold an ounce of cocaine to Sciuto for $2,150. Although law enforcement officers set up surveillance of this transaction, they did not arrest Gordon at that time. There were some subsequent meetings of Sciuto, Solomon, and Gordon. The defendant was arrested on July 10.

*The Tapes.*

At trial, over defendant's objection, the government introduced the tapes of the various conversations of Sciuto, Solomon, and Gordon. The original tapes which were taken by the body recorder contained considerable background noise, and therefore the government introduced filtered versions of them. The government provided transcripts of all of the tapes. With regard to each tape, Sciuto testified that the corresponding transcript accurately reflected the conversation recorded; however, the person who prepared the transcripts did not testify.

Gordon asserts that the foundational requirements for introduction of tape recordings set forth in *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), were not met in this case.[1]

Gordon claims that because of the overall poor quality of the tapes, because some

---

1. *McMillan* requires that the proponent of the tapes demonstrate:

(1) That the recording device was capable of taping the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

508 F.2d at 104.

tapes were filtered, because Sciuto kept one tape overnight, and because speakers were not identified other than by transcripts, the tapes should have been excluded.

The fact that certain portions of the tape are inaudible does not render the entire tape inadmissible. The trial judge has broad discretion to admit tapes, *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *United States v. Howard*, 504 F.2d 1281, 1287 (8th Cir. 1974), and we think that no abuse of discretion occurred here.

We do not agree that the filtered tapes should have been excluded. The person who prepared those tapes testified as to the process by which the tapes were filtered and also as to his care and control of the original tapes. Use of filtered tapes is permissible when the originals contain significant background noise. *See Fountain v. United States*, 384 F.2d 624, 631 (5th Cir. 1967), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). The defendant objects to the admission of the tape Sciuto kept overnight because that tape is the only one in which Gordon used the word "cocaine." There exists only remote speculation that Sciuto tampered with this tape and inserted the word "cocaine." As the government points out, Sciuto's voice is completely different than Gordon's. The admissibility of these tapes lay clearly within the discretion of the trial court.

As the tapes were played, Sciuto did not identify the speakers line for line. Instead, he identified the persons with whom he spoke during the conversations, and the jury used the transcripts. We think that there was no error in this procedure. We note that the jury listened to Sciuto testify for quite some time, and therefore could have easily distinguished his voice from those of Solomon and the defendant. Further, the first two tapes introduced had only Gordon and Sciuto, and the third tape had only Solomon and Sciuto. By the time of the fourth tape, which contained all three voices, the members of the jury had had the opportunity to familiarize themselves with all three voices.

*The Transcripts.*

█ The defendant also contends that there was no proper foundation laid for the use of the transcripts since the preparer of the transcripts did not testify. We note that before each tape was played, Sciuto testified that the transcripts accurately reflected the conversation on the tape. Further, Gordon has not called our attention to any inaccuracies in the transcript. Although we do not find prejudicial error in the use of the transcripts while the tapes were played (they did not go to the jury), nonetheless, we emphasize our caution set forth in *McMillan* :

> Transcripts should not ordinarily be read to the jury or given independent weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference. Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence.

508 F.2d at 105–06.

*The Polygraph Test.*

█ The defendant next contends that the trial court erred when it refused to admit the results of polygraph tests. Gordon submitted to two such tests; one produced inconclusive results and the other produced exculpatory results. He also offered to take a polygraph test under government supervision, but the government did not agree. He invites this court to reconsider its holding of *United States v. Alexander*, 526 F.2d 161, 166 (8th Cir. 1975), that absent stipulation, polygraph test results should not be admitted.

We find his arguments for overturning *Alexander* to be unpersuasive. First, his argument that refusal to admit the test results amounts to a denial of due process was rejected by this court in *United States v. Bohr*, 581 F.2d 1294, 1303 (8th Cir.), *cert.*

denied, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). Second, even if, as he urges, polygraph techniques have dramatically improved in recent years, there is still no evidence that a "lie detector" has any scientific reliability. Under our decisions there exists no abuse of discretion in the exclusion of these tests by the trial court. *United States v. Earley*, 657 F.2d 195, 198 (8th Cir. 1981); *Conner v. Auger*, 595 F.2d 407, 411 (8th Cir.), *cert. denied*, 444 U.S. 851, 100 S.Ct. 104, 62 L.Ed.2d 67 (1979); *United States v. Bohr*, 581 F.2d 1294, 1303 (8th Cir. 1978); *United States v. Smith*, 552 F.2d 257, 260 n.3 (8th Cir. 1977).

*The Prosecutor's Remarks.*

■ As a final argument the defendant contends that the trial court should have granted a mistrial when the prosecutor stated that Solomon turned over his business to Gordon, and when the prosecutor stated that Solomon had already been indicted in two cases and was "gone." Gordon protests that there was no evidence that Solomon turned over the business to him. He also urges that the statement that Solomon was "gone" implied that Solomon had either pleaded guilty or had been convicted, and with the information that Solomon was guilty, the jury would conclude that his co-conspirator, Gordon, was also guilty.

■ Statements made at final argument must be taken in the context of the entire trial, and the district court has broad discretion in controlling final argument. *United States v. McCaghren*, 666 F.2d 1227, 1232 (8th Cir. 1981). We find that the district court did not abuse its discretion in refusing to grant a mistrial based on the statement that Solomon turned over the business to Gordon, because there was evidence to support this statement. Sciuto testified that both Gordon and Solomon told him that he must deal with Gordon instead of Solomon because Solomon was "hot."

The statement that Solomon was "gone" was a response to the final argument of the defense, which was that Sciuto was not credible because he only got paid if he made a case on someone else.[2] The government responded that if this were true, then Sciuto would also have built a case on Wayne Lawler (who appeared at one meeting of Sciuto, Gordon, and Solomon). However, the government argued, Sciuto "said the only person dealing with cocaine and conspiring to do it were Solomon and Gordon. And Solomon already had been indicted on two cases. He's gone."

We think that in context, the most damaging inference from the phrase "he's gone" was that Solomon was unavailable for Sciuto to build a case against, because Solomon already had two indictments against him. It is only remotely possible that the jury would have inferred from this statement that Solomon pleaded guilty; in any event we do not find that Gordon was unfairly prejudiced by it.

Accordingly, the decision of the district court is affirmed.

■

---

2. Actually, the defendant was the first to inform the jury concerning Solomon's illegal activities. In opening statement counsel stated:

The evidence will show, however, that the procedures employed by the DEA, they pay people for information only if it is what they refer to as productive; and that the DEA was not particularly interested in Allan Solomon, in view of the fact they had already had two cases on cocaine against Mr. Solomon . . . .