**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Harold THURSTON,
Defendant-Appellant.**

**No. 51720.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 30, 1987.

Motion for Rehearing and/or Transfer
Denied July 30, 1987.

Application to Transfer
Denied Sept. 15, 1987.

---

Charles C. Schwartz, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of attempted robbery in the first degree, armed criminal action, and assault in the second degree. He was sentenced as a prior offender to 15 years, life, and 5 years consecutively on the respective counts. We affirm.

The victim, Sterling Pfeifer, was an employee at a Martin self-service gasoline station in Farmington. At approximately 9:45 p.m. he was preparing to close. Immediately before the station had been busy. No customers or other employees were at the station and Pfeifer utilized the lull to restack the oil shelves. As he was picking up a box of oil cans in the storeroom, he slipped and as he was attempting to right himself was shot. Immediately after hearing the shot he heard someone say, "You're shot" and saw a man near the front door. Pfeifer could see only the back of the man and could not identify him. The man then left the station, without taking anything. Pfeifer struggled to a sitting position bleeding profusely. He was unable to further assist himself or seek assistance. The bullet had entered his body under his right shoulder blade, exited through the left side of his neck, reentered and exited his left shoulder. He sustained a collapsed lung and shattered rib. Another customer then entered the station and called the police. Pfeifer underwent surgery and was in in-

tensive care for four days and in the hospital for ten.

Police located a Halloween mask outside the premises and an empty bottle of peach brandy. Defendant was arrested three days later and gave an oral tape-recorded statement to police. His statement was that he went to the Martin station to rob it, that he was intoxicated, and that he stumbled against the door causing his weapon to discharge. There was evidence by witnesses that they had transported defendant to the area near the Martin station at approximately the time of the robbery. He had with him at that time a change of clothes, the Halloween mask and a bottle of liquor. There was evidence that defendant's liquor of choice was peach brandy although he would drink anything. When defendant left the men who transported him to the scene, he suggested to the witnesses that they had not seen him. Defendant and his witnesses testified to a level of intoxication prior to the robbery sufficient to cause defendant to black out. At trial defendant had no memory of a robbery or assault.

■ Defendant first contends that the evidence was insufficient to support the charges and convictions. As to the attempted robbery and armed criminal action counts, this is based on the contention that the evidence failed to establish an intent to steal. This conveniently overlooks defendant's statement three days after the assault that he went to the Martin station to rob it.

■ As to the assault count, the attack is based on the proposition that the evidence did not establish the victim suffered "serious physical injury." Sec. 565.-060.1(3) RSMo 1986. Serious physical injury is a physical injury that "creates a substantial risk of death." Sec. 556.061(26) RSMo 1986. The offense of assault second degree submitted to the jury as a lesser included offense, was that defendant recklessly caused serious physical injury to Pfeifer. There was evidence that defendant entered the Martin station holding a gun while in an intoxicated condition and that the gun discharged when defendant stumbled against the door. That suffi-

ciently establishes recklessness. While there was no medical testimony of seriousness of the injury the evidence fully established the seriousness. The victim was left alone bleeding profusely and unable to further help himself. The bullet collapsed a lung and shattered a rib. It went through what any reasonable person would regard as a vital part of the body. It requires no expert medical testimony to establish that a gunshot wound in the lung resulting in profuse bleeding and disabling the victim from obtaining assistance is life-threatening. The evidence was sufficient to support the verdict.

■ Defendant next complains of two instances where it is contended that the court erroneously allowed evidence of other crimes by defendant. The first arose on cross-examination of a defense witness. On direct the witness had testified that on the night in question he and defendant had driven to a liquor store. Defendant drove because the witness is going blind; defendant was intoxicated at that time. The witness opined that he allowed defendant to drive because, "I knew that he could drive fairly well, you know, even when he was drunk, because I had been with him." On cross-examination the prosecutor, referring to that testimony, asked the witness if he was aware that defendant had "a DWI and been convicted of that in 1976 in Farmington." The court sustained an objection and directed the jury to disregard the question but refused a mistrial. We are at a loss to find prejudice. Defendant's witness had already testified to defendant having driven while drunk in the witness' presence, once on the night of the occurrence and at least once previously. During defendant's cross-examination he testified to a series of crimes, most minor in nature including one for impaired driving. The defense in this case was defendant's severe intoxication and the record was replete with evidence of his serious alcoholism. The court's admonition was adequate to remove whatever minimal prejudice the challenged question might have caused.

■ The second incident is similar. On direct examination wife testified that defendant was currently residing in the state penitentiary. The impression left was that

such incarceration resulted from the crimes at trial. During cross-examination the prosecutor elicited the information that the sentence being served was for leaving the scene of an accident after striking a telephone pole. Defendant was examined concerning the same matter during his cross-examination. The testimony was relevant to correct an erroneous impression left by the wife and was certainly not prejudicial in view of the cross-examination of husband. *State v. Hawkins,* 703 S.W.2d 67 (Mo.App.1985) [4, 5].

■ Defendant contends that the court erred in failing to sustain an objection to the prosecutor's argument that the victim "could have easily died." In view of what we have previously said, this argument was permissible and justified.

■ Defendant also contends that the prosecutor commented on the defendant's right to remain silent during the voir dire examination. The statement made was: " ... it is our belief that there will be evidence of drinking by the defendant in this case." Defendant interpreted this as if the words "by the defendant" appeared after the word "evidence," thereby telling the jury the defendant would testify. The trial judge did not so interpret the statement and neither do we. At any rate the prosecutor then made clear that he expected the state's evidence to show drinking by the defendant. We find no error.

Defendant's final point is that the court erroneously allowed the use of a transcript by the jury while the tape-recorded statement of defendant was being played. Missouri courts have adopted the test set forth in *U.S. v. McMillan,* 508 F.2d 101 (8th Cir.1974) [8–13] in determining whether to allow the use of transcripts. *State v. Montgomery,* 590 S.W.2d 105 (Mo.App. 1979) [5]. All of the requirements of the *McMillan* test were substantially met here.

Judgment affirmed.

DOWD and REINHARD, JJ., concur.