**Farron D. LAKE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 53S00–8808–CR–738.**

Supreme Court of Indiana.

Jan. 23, 1991.

Lisa A. Farnsworth, Monroe County Public Defender, Bloomington, for appellant.

Linley Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant, Farron D. Lake, was convicted on two counts of criminal confinement, I.C. 35–42–3–3, a Class B felony. Appellant received the presumptive ten-year sentence for his conviction on Count One, and that sentence was enhanced an additional ten years for aggravating circumstances. For his conviction on Count Two, appellant received the presumptive ten-year term. The trial court ordered that the sentences run concurrent to each other.

The facts adduced at trial were as follows: In July of 1986, appellant and Pam Matlock began seeing each other on a daily basis. At this time, appellant was twenty-three years old while Pam was fifteen years old. In August of 1986, at appellant's invitation, Pam decided to leave home and go to Texas with appellant. Pam's mother, Mary Gill, filed a complaint with the prosecutor's office in September of 1986, charging appellant with contributing to the delinquency of a minor. After three months, they returned to Indiana from Texas. It was at this time that Pam realized that she was pregnant with appellant's child. On December 26, appellant was arrested for contributing to the delinquency of a minor.

Appellant remained in jail until March of 1987. While he was in jail, appellant asked Pam if she would marry him. Pam testified that she told appellant that she did not want to marry him because of his drug use and propensity for violence. She stated that appellant issued threats against her from jail. Upon his release from jail, appellant often went to Pam's house trying to see her. Pam testified that appellant made several attempts to enter the house forcibly. Pam and her mother stated that they often called the police in an effort to keep appellant away from their house.

On May 27, 1987, Pam's brother helped appellant enter the rear of the house so he could speak to Pam. After returning home from a picnic, Pam went upstairs to change clothes. She heard a noise in her brother's room and then saw appellant. Pam stated that appellant grabbed her by the hair and held a knife to her throat. He then told Pam to call her mother. Mary Gill testified that she came running upstairs and saw appellant holding a knife to her daughter's throat while he clutched her hair. Appellant told Mary Gill to go down and start her car and to wait for him and Pam. When appellant exited the house, he was holding the knife against Pam's body. Pam's sister, Lisa, called the police after Mary drove the three of them away. On appellant's instructions, Mary drove to Whitehall, whereupon appellant told Mary to drive back the way she came; he then took Pam with him and they ran toward a wooded area.

Pam and appellant first went to a house belonging to Ronnie White, a friend of appellant. Pam testified that she did not tell Ronnie that she was being held against her will because appellant had threatened to cut her throat if she told anyone. They

spent the first night sleeping in a car parked outside of Ronnie's place of work. They were awakened by security guards asking what they were doing there. Appellant told the guards that he and Pam were married and were waiting for Ronnie to get off work. Pam testified that she did not say anything to the security guards because she was scared. Pam saw several other people during the three days she spent with appellant following her abduction, but she stated that she was afraid to inform anyone as to her situation.

On the morning of May 30, Pam got up to use the restroom and noticed that all the other people in the trailer where she and appellant were staying were asleep. She sneaked out the front door and ran across the highway to a neighbor's house to call the police. She told the person who answered the door all that had happened to her. The police arrived shortly thereafter and, after a two-hour stand-off during which appellant threatened to kill himself, he gave himself up.

Appellant now brings this direct appeal arguing that he is entitled to a new trial because, in failing to admonish the jurors prior to each recess, the trial court failed to ensure that appellant received a fair trial by an impartial jury. Appellant also contends that, if his request for a new trial is not granted, his sentence should be revised as the sentence imposed by the trial court was manifestly unreasonable.

A statute in relation to state criminal trials in force at the time of appellant's trial, I.C. 35–37–2–4(a), provides that the court shall admonish the jurors in the preliminary instructions, before separating for meals, and at the end of the day. An admonishment should inform the jurors that it is their duty not to converse among themselves or permit others to converse with them on any subject connected with the trial, or to form or express any opinion about the case until the cause is submitted to them. *Id.* The reading of the admonishment to the jurors at the prescribed times is mandatory.

A review of the trial record in the present case shows that the trial lasted three days and the trial judge accurately admonished the jurors in the preliminary instructions, at the conclusion of testimony on the first day of trial, at a recess on the second day of trial, before lunch on the second day of trial, and at another recess on the second day of trial.

Appellant identifies three points in the trial where he insists the court failed to follow the statute and did not properly admonish the jury. One such point identified by appellant was reached on the second day of trial just before a brief thirty-minute recess. The statute, however, requires the court to admonish the jurors in only three specific instances: in the preliminary instructions, before separating for meals, and at the end of the day. The statute, therefore, did not require an admonishment before this thirty-minute recess. Nonetheless, the trial judge did remind the jurors of their admonishment at that time, although he did not read the admonishment in its entirety. The failure to admonish the jury before this brief recess cannot be said to have constituted error, as the statute does not require an admonishment at such a point.

Likewise, the second point that appellant identifies as an instance where the trial court should have admonished the jury is not a point at which the statute calls for an admonishment. Late in the afternoon on the second day of trial and following the presentation of evidence by the State and the defense, the trial judge announced that there was going to be a recess and then a prompt resumption of testimony by the State's rebuttal witnesses. When the jury reconvened, however, the trial judge stated that any testimony by rebuttal witnesses would be postponed until the third and final day of the trial. An admonishment prior to this break was not required by the statute. This break was only a brief recess, and did not occur before a meal or at the end of the day.

The third point identified by appellant, however, is one at which a jury admonition is required. When proceedings resumed following the afternoon break on February 17, 1988, the trial judge informed

the jurors that he was going to excuse them for the day and that they would resume the trial on February 19. The court informed the jurors that February 18 would be set aside for the resolution of legal matters. According to the record of proceedings, the trial court did not issue any admonishment to the jurors at the end of the second day of testimony. The statute explicitly calls for an admonishment at such time.

At trial, the manner in which the trial court handled the jury at the end of the second day was not called into question and no request for an admonition was made. Defense counsel was then present. In *Arthur v. State* (1976), 264 Ind. 419, 345 N.E.2d 841, this Court held that, while the terms of the statute are mandatory in their call for an admonition of the jurors at specific times, no error is preserved for appeal where there was no objection interposed at the time of the action complained of. Generally, a timely objection must be made to the failure to admonish the jury. *Choate v. State* (1984), Ind., 462 N.E.2d 1037, 1046.

Even if the issue had been raised by a timely objection and properly preserved for appeal, we would not be inclined to reverse unless it appeared that the lack of a proper admonishment worked to prejudice the substantial rights of the defense. There is no basis in this record for the conclusion that such prejudice was created when the trial court permitted the jury to separate at the end of the second day of trial without giving them this required admonishment. In his brief, appellant acknowledges that he bears this burden of demonstrating prejudice, but states that it is an impossible one. Appellant does not substantiate his claim that such a burden is an impossible one. Here, there is but a single lapse in the process of admonishing the jurors during a trial in which several admonitions, both before and after the lapse, were called for and properly given. Upon considerations of this sort, abstracted from the events of a trial, as well as upon other evidence, an assessment of prejudice can be made.

Where this required showing of prejudice to substantial rights is not made, the Court will not reverse convictions. *Brown v. State* (1964), 245 Ind. 604, 201 N.E.2d 281.

■ Appellant next maintains that, given the nature of the offenses and of his character, the sentence imposed by the trial court was manifestly unreasonable. As to Count One, the trial court imposed the presumptive sentence of ten years and assessed an additional ten years for aggravating circumstances. The trial court imposed the presumptive sentence of ten years for appellant's conviction on Count Two and ordered that the sentences run concurrent to each other. A reviewing court is empowered to revise a sentence authorized by law if the sentence imposed is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B).* A sentence is not manifestly unreasonable unless no reasonable person could consider the sentence appropriate given the particular offense and the particular offender. *Hill v. State* (1986), Ind., 499 N.E.2d 1103.

In enhancing appellant's sentence on Count One, the trial court recognized the following as aggravating circumstances:

1. Appellant had a substantial prior criminal history beginning July 24, 1974, and continuing through September 9, 1980, with the contacts becoming more serious as time progressed.
2. Prior attempts at probation have been attempted and have failed and, therefore, appellant is in need of correctional rehabilitative treatment.
3. One of the victims involved in this cause was a sixteen-year-old juvenile.
4. The imposition of a suspended sentence would depreciate the seriousness of the crime.

As a mitigating circumstance, the trial court noted the letter written by Kay Sloan, a juror in the cause. Sloan stated that appellant's actions did not seem to be criminally minded, but rather could be characterized as an act of passion. The trial court stated that it intended to grant

* Formerly Ind. Rule for Appellate Review of Sentences 2(1).

any mitigation by imposing concurrent sentences.

Appellant asserts that the trial court failed to take into account the following mitigating circumstances: 1) appellant's age; 2) the victim of the crime induced or facilitated the offense; 3) appellant acted under strong provocation; 4) imprisonment of appellant will result in undue hardship to his dependent; and 5) there are substantial grounds tending to justify the offense. Appellant maintains that had the court considered these mitigating factors and properly balanced them against any aggravators, the court could not have enhanced appellant's sentence.

We do not find strong support in the record for the mitigating circumstances cited by appellant. Appellant was twenty-four years old at the time of the offense. This age does not warrant the granting of any leniency in terms of mitigating circumstances. Appellant knew that Pam was eight years younger and that their relationship was tenuous and subject to legal constraints. There is no evidence in the record that suggests that she induced this attack. Pam was abducted from her home at knife-point and was not aware of appellant's presence in her home until immediately prior to her abduction, and this abduction occurred two months after Pam decided to return to her family and not to live with appellant as man and wife. Appellant's violent attack came after this extended period for reflection and was not an immediate reaction to an abrupt termination of the relationship. Appellant does not identify any evidence that would substantiate his claim that he acted under strong provocation, and we do not find any such evidence in the record.

There is some merit to appellant's claim that his imprisonment will impose hardship upon his dependent. However, given the barren nature of appellant's employment history, the magnitude of this hardship is greatly reduced as is its corresponding mitigating weight. Appellant further contends that there are substantial grounds tending to justify the offense. Appellant may be referring to his comments at the sentencing hearing where he stated that things got out of hand and that his goal was to establish some kind of contact with his child. While such statements may explain appellant's own rationale for his criminal conduct, it is not evidence that justifies the offense.

A review of the record reveals that each aggravating circumstance cited by the trial court is well supported by the evidence. We do not find the sentence imposed to be manifestly unreasonable in light of the particular offense and the offender. Appellant's convictions and corresponding sentences are therefore affirmed.

SHEPARD, C.J., and GIVAN, DICKSON and KRAHULIK, JJ., concur.