Jason SMALL, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 82S00–9811–CR–00691.

Supreme Court of Indiana.

Oct. 19, 2000.

Stephen H. Owens, Evansville, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Jason Small appeals his conviction for murder, contending that the trial court committed reversible error in several respects. We find the trial court properly allowed evidence that Defendant contends was hearsay and otherwise committed no reversible error.

This Court has jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. 7, § 4; Ind. Appellate Rule 4(A)(7).

### Background

A summary of the facts most favorable to the verdict follows. For a similar discussion, see our companion opinion in *Martin v. State*, 736 N.E.2d 1213, 1215 (Ind.2000).

On the evening of October 13, 1997, Defendant and co-defendant Clarence Martin left Jessica Compton's home and drove to Charles Reed's house to obtain marijuana. Reed answered the door and let both Defendant and co-defendant Martin into the house. As Reed went to the back bedroom to retrieve the requested marijuana, he informed his girlfriend, Nicole Phipps, that Defendant and co-defendant Martin were in the living room. Upon returning to the living room, Phipps heard gunshots. From the bedroom, she peered into the kitchen and observed Defendant instructing someone to shoot [Reed] in the head. After the gunshots had subsided, she heard co-defendant Martin tell Defendant, let's go.

Police were summoned and found Reed shot to death. The autopsy showed gunshot wounds to the lower abdomen, buttocks, lower chest, left jaw, chin and mouth. He had died from the accumulation of blood in his chest cavity.

The State charged Defendant with Murder[1] and Robbery,[2] a class B felony. Both Defendant and co-defendant Martin were tried together before a jury on June 12, 1998.[3] The jury convicted Defendant of murder but found him not guilty of robbery. On July 9, 1998, the trial court sentenced Defendant to 60 years.

Additional facts will be provided as necessary.

### Discussion

#### I

Defendant first contends that the trial court committed reversible error when it allowed the State to read portions of witness Jessica Compton's deposition into evidence and in failing to give a limiting instruction.[4] The deposition contained statements purportedly made by co-defendant Martin.

■ The decision to admit or exclude evidence is within the sound discretion of the trial court and is afforded a great deal of deference on appeal. *See Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997). In

---

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.* § 35–42–5–1 (1993).

3. The Record does not indicate that either Defendant or co-defendant Martin sought separate trials and neither raises any claim with respect to severance.

4. Contrary to Defendant's contention in his brief, the State did not offer Ms. Compton's deposition for impeachment purposes under Rule 801(d)(1). *See* Appellant's Br. at 9–10. The State offered it in an effort to refresh her recollection concerning what she overheard co-defendant Martin say the day after Mr. Reed had been shot. (R. at 930–41.)

making its decision to admit this evidence, the trial court was guided by Indiana Evidence Rule 803(5) that provides

> a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have. been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

*See also Flynn v. State,* 702 N.E.2d 741, 744 (Ind.Ct.App.1998), *transfer denied,* 714 N.E.2d 172 (Ind.1999); *Mejia v. State,* 702 N.E.2d 794, 797 (Ind.Ct.App.1998).

■ Here, the State established that during her trial testimony, Ms. Compton could not recall the exact answers she previously gave during her deposition. In an attempt to refresh her recollection, Ms. Compton was given a copy of her deposition. Even after careful review, she could not recall making the specific statements documented in her deposition. As such, the trial court properly permitted the State to read relevant portions of her deposition into evidence pursuant to Indiana Evidence Rule 803(5).

■ Defendant also contends that the trial court failed to give a limiting instruction he requested to the jury once portions of the deposition were read into evidence. The lack of a proper instruction, Defendant argues, resulted in a prejudicial impact to his substantial rights. Specifically, Defendant argues that co-defendant Martin's statement – I think I shot him, killed him – reported by Ms. Compton in her deposition permitted the jury to transfer Martin's guilt to him.[5] A proper limiting instruction, Defendant argues, would have prevented such transference.

Our review of the record,[6] however, establishes that the trial judge *did* admonish the jury as to the limited admissibility of this evidence pursuant to Indiana Evidence Rule 105. (R. at 937–38; The court will allow the statement to be read into evidence, and will instruct the jury that the admission of one of the defendants against his penal interest cannot be considered as guilt in the case of the other.).[7] Defendant also claims that the probative

---

5. Defendant does not claim any error under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), or Indiana Code § 35–34–1–11(b) (1993) (Indiana's codification of the *Bruton* rule).

6. The record consistently indicates when a discussion takes place outside the presence of the jury.

7. The following colloquy appears to have taken place in the presence of the jury:

> [Counsel for Defendant]: I would object because the portions of the deposition which [the State] is attempting to introduce contain hearsay statements, and for that reason I would object to the introduction of those as to Mr. Small.
> THE STATE: Can you be more specific, Mr. Owens, as far as what lines you're referring to?
> * * *
> [Counsel for Defendant]: Line 6 and 7 and 8.

> THE STATE: Well, those are admissions against interest.
> [Counsel for Defendant]: They may be admissions against interest as to Mr. Martin, but certainly not as to [Defendant], so I would object to their introduction as to my client.
> THE STATE: Well, Your Honor, I believe ... are you asking for severance of the trial at this point?
> [Counsel for Defendant]: I'm asking for a limiting instruction, ... if its going to be admitted. Right now I'm objecting to its introduction into evidence.
> * * *
> THE COURT: The court will allow the statement to be read into evidence, and will instruct the jury that the admission of one of the defendants against his penal interest cannot be considered as guilt in the case of the other.
> (R. at 933–39.) Thereafter, portions of Ms. Compton's deposition were read into evidence wherein she stated that she heard co-defendant Martin say I think I shot him, killed him.

value of this evidence is outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. But Martin's statement does not implicate, much less refer to, Defendant in any way. Given the absence of any reference to Defendant and the limiting instruction given at trial, we find that Defendant has failed to demonstrate the prejudicial impact necessary to exclude the evidence under Rule 403.

## II

Defendant next contends that the trial court committed reversible error when it allowed Detective Taylor to testify regarding Sonya Steverson's out-of-court statement that he should search for the guns at a house on Culver Street. We address this same argument as it relates to co-defendant Martin. *See Martin v. State,* 736 N.E.2d at 1216–1219.

■ The same analysis and holding in *Martin* as to this testimony applies here. Sonya Steverson's statement to Officer Taylor (that he should search for the guns at a house on Culver Street) was properly admitted as impeachment evidence under Indiana Evidence Rule 613 and our decision in *Humphrey v. State,* 680 N.E.2d 836, 838–39 (Ind.1997). *See Martin,* 736 N.E.2d at 1217–1218.

In the alternative, Defendant claims that the trial court failed to admonish the jury to limit its consideration of this evidence (1) to impeachment purposes only and (2)

only as evidence against co-defendant Martin.

■ But a trial court has no affirmative duty to admonish a jury sua sponte as to such evidentiary matters. *See Humphrey,* 680 N.E.2d at 839. As we explained in *Martin,* if a defendant believes there is a danger that a jury could use a statement as substantive evidence, then it is incumbent upon the defendant to request that the jury be admonished that the statement be used to judge the witness's credibility only. *See Martin,* 736 N.E.2d at 1218; *see also Humphrey,* 680 N.E.2d at 839 (quoting Ind. Evidence Rule 105).

■ Defendant failed to request either admonition and accordingly has waived any claim of error based on the trial court's failure to do so.[8] *See id.* at 840 ([W]e hold that Rule 105 means what it says and that by failing to request an admonition [the defendant] has waived any error based on the absence of an admonition.).

## III

■ Defendant next contends that the trial court committed reversible error when it allowed Officer Hilsmeyer to testify concerning a prior contact that he had with the Co–Defendant Clarence Martin some three (3) months prior to the murder. Appellant's Br. at 12. Martin had provided the address of the house on Culver Street as his place of residence to Officer Hilsmeyer during a routine traffic

8. During the hearing the State almost encouraged Defendant to admonish the jury given that the prior inconsistent statement was admissible for impeachment purposes: [H]e can ask for a limiting instruction to the jury to say, 'Jury, you are only to consider this as impeachment of Sonya Steverson.' (R. at 1002.)

We also note that although a limiting instruction concerning impeachment was not given immediately after the statement was admitted into evidence, the trial court did read the following instruction to the jury:

The credibility of a witness may be attacked by introducing evidence that on some for-

mer occasion the witness (made a statement) (made a written statement) (in former testimony testified) (acted in a manner) inconsistent with his testimony in this case. It is inconsistent if the witness denied making the prior statement. Evidence of this kind may be considered by you in deciding the weight to be given to the testimony of the witness.

(R. at 1779; Instruction No. 13.) This instruction appropriately reminded the jury what weight to assign this evidence just prior to jury deliberations.

stop. Again, we address this same argument as it relates to co-defendant Martin. *See Martin v. State*, 736 N.E.2d at 1215.

The same analysis and holding in *Martin* that this evidence was properly admitted as to co-defendant Martin applies here:

> We do not find the prior conduct presented to the jury here, a response to a question asked during a routine traffic stop, constituted a prior bad act from which the jury might draw a forbidden inference about Defendant's character or guilt. No reference was made to the purpose of the stop or to the arrest and filing of charges that resulted. Furthermore, the officer's testimony was offered to link Defendant to this address. As such, the testimony was directly relevant to an issue at trial. The trial court did not abuse its discretion in admitting the officer's testimony.

*Martin*, 736 N.E.2d at 1215.

Evidence Rule 105 provides that where evidence is admissible as to one party but not as to another, the trial court must, upon request, restrict the evidence to its proper scope and admonish the jury accordingly. Here, Defendant requested and received a Rule 105 limiting admonishment to the jury to consider any statement made by co-defendant Martin only against Martin,[9] and despite Defendant's claim that spillover prejudice also occurred here in violation of Evidence Rule 403, we again observe that co-defendant Martin's statement did not implicate, much less refer to, Defendant in any way. We find no error.

■ Defendant also contends that his constitutional right to confront witnesses was violated because he was unable to cross-examine Martin regarding this statement. However, Defendant did not object on Confrontation Clause grounds at trial. Defendant only objected on the grounds that it was inadmissible hearsay that did not fall within the exceptions of either 801(d)(2) or 803(8).[10] A defendant may not raise one ground for objection at trial and argue a different ground on appeal. *See Simmons v. State*, 714 N.E.2d 153, 155 (Ind.1999) (citing *Willsey v. State*, 698 N.E.2d 784, 793 (Ind.1998) (citing in turn *Marshall v. State*, 621 N.E.2d 308, 316 (Ind.1993))). This claim of error is waived.

9. The following colloquy ensued concerning the limiting instruction to the jury:

> [Counsel for Defendant]: I would also ask in addition for a limiting instruction with regard to the testimony since it is not ... since what is going to be testified to does not relate to Jason Small.
>
> THE STATE: Your, Honor, well, I'm going to object to that limiting instruction. I don't think it's necessary. I think it is confusing. We haven't done throughout this trial. I think it's been done on one other occasion.
>
> THE COURT: I'll sustain the motion and instruct the jury that any statements made by Mr. Martin can be considered only against Mr. Martin and not against Mr. Small.

(R. at 1359.)

10. Defendant and co-defendant Martin argued at trial that because Officer Hilsmeyer's testimony was based on police records, it should have been excluded pursuant to Indiana evidence Rule 803(8). The hearsay exception for public records and reports found in Indiana Evidence Rule 803(8) provides that

> [u]nless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case....

The trial court did not abuse its discretion in allowing the testimony because the State did not admit any police records or investigative reports but relied solely on Officer Hilsmeyer's testimony to establish Defendants connection to the Culver address. *See Martin*, No. 82S00–9811–CR–00710, slip op. at 5 n. 5.

**748**

## IV

Defendant lastly contends that the trial court committed reversible error when it allowed the State to introduce a transcript of Defendant's tape recorded statement to police and allowed copies to be provided to the jury. The State argues that because portions of the tape-recorded statement were difficult to understand, the trial court properly admitted the transcript.

A transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. *Bryan v. State*, 450 N.E.2d 53, 59 (Ind.1983) (quoting *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974)).[11]

> Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances under which it will be replayed or the need to identify the speakers, it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case, this will not be prejudicially cumulative.

*Id.* (quoting *McMillan*, 508 F.2d at 105 (internal citations omitted)). In *Bryan*, we also recognized that

> [t]he trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speakers voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference.

*Id.* (quoting *McMillan*, 508 F.2d at 105).

### A

Defendant argues that the trial court failed to instruct the jury to rely on what it heard in the recorded statement rather than what it read in the transcript as required by *Bryan*. *Id.* at 59. *Accord Sharp v. State*, 534 N.E.2d 708, 712 (Ind. 1989); *Seay v. State*, 529 N.E.2d 106, 109 (Ind.1988). As such, Defendant claims that he was prejudiced by this failure to instruct.

Generally, when a trial court fails to give the requisite admonishment, a timely objection must nevertheless be made to preserve error for appeal. *Lake v. State*, 565 N.E.2d 332, 335 (Ind.1991); *Choate v. State*, 462 N.E.2d 1037, 1046 (Ind.1984). In *Lake*, we concluded that although the statute mandated that the trial court admonish the jury at specific times, no error is preserved for appeal where there was no objection interposed at the time of the action complained of. *Lake*, 565 N.E.2d at 335 (citing *Arthur v. State*, 264 Ind. 419, 345 N.E.2d 841 (1976)). A review of the record reveals that Defendant failed to interpose an objection at the time the transcripts were distributed to the jury. Accordingly, Defendant has waived this error on appeal.

### B

Defendant also contends that the trial court erred in admitting the transcript as an exhibit. Transcripts should ordinarily not be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *Bryan*, 450 N.E.2d at 59 (quoting *McMillan*, 508 F.2d at 105). The record does not reveal that Defendant challenged the admission of the transcript on the basis of its inaccuracy but merely that it was cumulative of the admission of the tape-recorded statement.[12] As we pointed out in *Bryan*, the decision to furnish the jurors with copies of a transcript to assist them in listening to the tapes will not usually be prejudicially cumulative. *See id.* Howev-

---

11. In *Bryan*, we recognized that our Court of Appeals adopted the standards enumerated in *McMillan* as the law in Indiana. *See Bryan*, 450 N.E.2d at 59 (citing *Duncanson v. State*, 181 Ind.App. 370, 391 N.E.2d 1157 (1979)).

12. Similarly, on appeal, Defendant has failed to identify any inaccuracies in the transcript.

er, the record does not reveal that the Defendant explicitly agreed to the admission of the transcript into evidence. As such, the trial court erred in admitting the transcript as an exhibit as opposed to serving only as an aid to the jury in interpreting inaudible or indistinct portions of the tape-recorded statement.

 Where inadmissible evidence has been presented to the jury, we will only reverse a conviction if the erroneous admission prejudiced the Defendant's substantial rights. Ind. Trial Rule 61; *Dockery v. State,* 644 N.E.2d 573, 580 (Ind. 1994); *Bustamante v. State,* 557 N.E.2d 1313, 1317 (Ind.1990). In determining whether reversal is warranted due to erroneously admitted evidence, this Court has the duty to assess the probable impact of the evidence on the jury, and where the record as a whole discloses that the erroneously-admitted evidence was likely to have a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict, reversal will be warranted. *Martin v. State,* 622 N.E.2d 185, 188 (Ind. 1993) (quoting *Mitchell v. State,* 259 Ind. 418, 424, 287 N.E.2d 860, 863 (1972)).

The prejudicial impact here was negligible. The jury was entitled to review the transcript as they listened to the tape-recorded statement. *See Bryan,* 450 N.E.2d at 59. The fact that the transcript was admitted as an exhibit therefore did not constitute reversible error.

Defendant, however, claims that the erroneous admission coupled with the lack of an instruction could have lead the jury to attribute guilt by association — that is, because Defendant was associated with co-defendant Martin, they returned with a guilty verdict for Defendant. However, the State provided other evidence sufficient to demonstrate Defendant's involvement in the crime and upon which the jury could well have relied. The strongest piece of evidence in this regard came from Ms. Phipps who not only testified that Mr. Reed told her that Defendant arrived at their house to purchase marijuana, but that she saw Defendant standing in her kitchen pointing a gun toward the living room saying "Folks, shoot him in the head; shoot him in the head." (R. at 402.) In light of this and all of the evidence in this case, we do not find that the erroneous admission prejudiced Defendant's substantial rights.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.