## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 07 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Jackson,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

July 7, 2016

Court of Appeals Case No.
49A02-1512-CR-2106

Appeal from the Marion Superior Court

The Honorable Angela Dow Davis, Judge

Trial Court Cause No.
49G16-1407-F6-36935

**Brown, Judge.**

[1] Michael Jackson appeals the revocation of his probation. He raises one issue which we revise and restate as whether the trial court abused its discretion in revoking his probation. We affirm.

## Facts and Procedural History

[2] In December 2014, Jackson pled guilty, pursuant to a plea agreement, to domestic battery as a class A misdemeanor. The court sentenced Jackson to 365 days with 359 days suspended to probation, and ordered that he have no contact with Megan Martin pursuant to the plea agreement.

[3] On October 13, 2015, a Notice of Violation of Probation was filed alleging that Martin made a police report on October 6, 2015, and that Jackson violated the no contact order by leaving a note on her vehicle while she was at a friend's house located at 7118 Gavin Drive.

[4] On October 21, 2015, the court held a hearing. Martin testified that Jackson was her husband, that on October 6, 2015, she and her friend Ryan Christmas were returning to Christmas's house on Gavin Drive, where Martin had left her truck, that she observed Jackson driving his vehicle, and that she ducked down in Christmas's vehicle so that Jackson would not see her.[1] The State introduced

---

[1] Martin testified that this occurred at "Three-ish," and when asked if it "was late afternoon, early evening," she answered "Yeah, in the late afternoon." Transcript at 7. The court admitted a police report "to show the time," transcript at 9, and the report stated: "Occurred: 10/6/2015 at 17:20" and "Reported: 10/6/2015 at 17:45." State's Exhibit 1.

an exhibit which Martin testified was a note that was left on her truck. The typewritten note provides:

> I need you. PLEASE. TODAY IS THE WORST DAY OF MY LIFE. I FIND OUT YOU ARE CHEATING . . . GET THE NEWS I JUST GOT. I WON'T SAY A WORD ABOUT WHAT YOU'VE DONE. JUST . . . PLEAAASE COME TAKE CARE OF ME I AM SOOOO LOST.
>
> PLLLLLLEEEEEAAASEE . . NO FIGHT NO BITCH NO ATTACK JUST LOVE ME . . . .

State's Exhibit 2. On cross-examination, Martin testified that Christmas found the note on her truck and handed it to her. Martin later testified: "I ran underneath the garage door. By the time it was all the way up, [Christmas] had . . . come in with the note within minutes." Transcript at 22. On redirect, the prosecutor asked "does [Jackson] know what kind of truck you drive," and Martin replied "[y]es." *Id.* at 25.

[5] An employee of Marion County Community Corrections testified that her duties included dealing with the GPS system, that they kept records of GPS coordinates in the ordinary course of business, and that GPS coordinates for Jackson showed that he was at 7118 Gavin Drive at 5:09 p.m. until at least 5:10 p.m. on October 6, 2015. When asked on cross-examination whether Jackson was excluded from being in that area on October 6th, the employee testified "[o]n that date he was not excluded from being there" and that "[i]t has since been added as a protected zone." *Id.* at 29.

[6] Jackson indicated that he worked in the mortgage business, that he had previously asked to be placed on GPS, and that he did so "[f]or an alibi, basically." *Id.* at 37. He testified that he received a call from a potential customer who asked him to come to his house on Gavin Drive, that this happened all of the time, and that he set up a time with the person. When asked if he had to obtain permission from home detention to do this, he testified "[t]ypically, something like this, no. . . . If I'm doing something on personal business, I have to get permission." *Id.* at 41. He indicated that he has "a GPS device that goes off if [he is] in the wrong area" and that his device did not go off. *Id.* When asked if he wrote the note, Jackson testified "No, I speak better English than this." *Id.* at 42. Jackson indicated that he did not know Christmas. He further indicated that he had "been here" and this was his "third or fourth time," that he had been "living with the fear of can [he] make it" to December 11th "to save [his] job" and not go to jail, and that he has tried his best to stay away from Martin. *Id.* at 43. Jackson testified that he thought he was set up.

[7] The court asked Jackson if he had any paperwork or a call slip related to his visit to the address on Gavin Drive, and Jackson answered that he did not, and he testified that he did not do a loan, that he went to the home and no one was there, that he did not record calls, and that he did not have a call log. The court asked if he was allowed to "go and do whatever you want while you are working as long as it's not personal," and Jackson replied "[w]ell, she knows what I do. I've explained to her what I do. And I try to e-mail them . . . ." *Id.*

at 49. The court asked if he sent an email on October 6th, and Jackson replied: "No. Well, I talked to her about it and she was not in any way upset about it. She understood." *Id.* at 50. The court asked "[a]nd it happened to be at the exact same address of 7118 Gavin," and Jackson answered "Yes. I think I was set up. She said I was there at 1:30 and I wasn't. It was 5:00. So she obviously didn't see me." *Id.*

[8] The trial court stated that it did not believe Jackson's version of what happened, that there was proof by a preponderance of the evidence that Jackson went to 7118 Gavin Drive, the same place that a note was left, and that Martin testified that she saw him. The court found Jackson in violation, gave him credit for the time he was on home detention, and ordered that he serve the balance of his suspended sentence in the Marion County Jail.

## *Discussion*

[9] The issue is whether the court abused its discretion in revoking Jackson's probation. Jackson asserts that, "[i]f indeed the typewritten note was placed on [Martin's] truck by Jackson, that would be a violation of the no contact order. However, there is no evidence that the note was put on [Martin's] truck by Jackson and no evidence that Jackson wrote the note or had it put on [Martin's] truck." Appellant's Brief at 8. He argues that he had a legitimate explanation for being at Gavin Drive that had nothing to do with Martin, that the only evidence that the note was found on Martin's truck was hearsay evidence based on what Christmas told her, that Christmas did not testify so he was not afforded his due process right to confront him, and that there is nothing

inherent in Martin's testimony that makes Christmas's allegation substantially trustworthy.

[10] The State argues that Jackson waived review of the admission of Martin's testimony that Christmas found the note on her vehicle because he did not object to the statements, that Jackson does not argue the admission of the statements by Christmas to Martin were fundamental error, that Christmas's statement about the location of the note was substantially trustworthy, and that the Confrontation Clause is inapplicable to probation revocation proceedings. The State further maintains that the court's determination that Jackson violated his probation was supported by substantial evidence, that Martin saw Jackson driving away from Christmas's house where her truck was parked, that Jackson's GPS monitor confirmed that he was at Christmas's house for two minutes that evening, that Christmas found the note on Martin's truck and immediately gave it to her and told her where he had found it, and that the court found that Jackson's completely unsupported explanation for his presence at Christmas's house was not credible. In reply, Jackson argues that "[t]he only relevant evidence is that Jackson was at 7118 Gavin Drive just before [Martin] got there and that [Martin's] friend handed a note to [Martin]" and that, "[h]owever, there is nothing to connect the note with Jackson." Appellant's Reply Brief at 5.

[11] With respect to the admission of Martin's testimony that Christmas told her where he discovered the note and Jackson's right to confront Christmas, we observe that Jackson did not object to this portion of Martin's testimony or

assert any right of confrontation. Accordingly, these issues are waived.[2] *See Marsh v. State,* 818 N.E.2d 143, 145 (Ind. Ct. App. 2004) (noting that the failure to object to hearsay evidence at a probation revocation hearing waives the issue for appeal); *see also Small v. State*, 736 N.E.2d 742, 747 (Ind. 2000) (holding, where the defendant contended that his right to confront witnesses was violated, that the defendant did not object on confrontation grounds at trial and that the claim of error was waived).

[12] With respect to Jackson's assertion the evidence is insufficient to support the court's finding that he violated his probation, we note that a probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence, that we consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses, and that, if there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke. *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999), *reh'g denied*. The record reveals that Martin's truck was at Christmas's house, that Jackson knew what kind of truck Martin drove, that Jackson went to Christmas's house, that, when Martin and Christmas were returning to Christmas's house, Martin observed Jackson driving his vehicle, and that, soon after Martin went inside, Christmas handed

---

[2] Jackson does not argue that the admission of Martin's testimony that Christmas told her where he discovered the note constituted fundamental error.

her the note. Given the circumstances as set forth above and in the record, we cannot say that the trial court abused its discretion in finding that Jackson violated the terms of his probation.

## *Conclusion*

[13] For the foregoing reasons, we affirm the trial court's order revoking Jackson's probation.

[14] Affirmed.

Baker, J., and May, J., concur.