## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2020, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Devon M. Sharpe
Jenner, Pattison & Sharpe
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Michael D. Crawley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 30, 2020

Court of Appeals Case No.
20A-CR-1002

Appeal from the
Jefferson Circuit Court

The Honorable
Richard Striegel, Sr. Judge

Trial Court Cause No.
39C01-1803-F4-303

**Vaidik, Judge.**

# Case Summary

[1] Michael D. Crawley was convicted of two counts of dealing in methamphetamine and one count of maintaining a common nuisance. He now appeals, challenging some of the trial court's rulings and the sufficiency of the evidence for his dealing convictions. We affirm.

# Facts and Procedural History

[2] In February 2018, Deputy Linton Spry of the Jefferson County Sheriff's Department arrested Chad Uebel for possession of methamphetamine and possession of paraphernalia. Deputy Spry asked Uebel if he wanted to "work off" his charges by becoming a confidential informant, and Uebel agreed to do so. Tr. p. 15. On February 21, Uebel contacted Crawley, an acquaintance, to buy "half of an eight-ball" of methamphetamine for $85. *Id.* at 29. Uebel then told police about the buy he had set up.

[3] Before going to Crawley's apartment to purchase methamphetamine, Uebel met Deputy Yancy Denning and Deputy Timothy Armstrong for a pre-buy interview and search. Deputies Denning and Armstrong searched Crawley's person and motorcycle for money and contraband and, finding none, gave him $85 dollars in buy money. After Uebel was fitted with an audio-recording device, he drove his motorcycle to Crawley's apartment in Hanover. Deputies Denning and Armstrong followed Uebel, never losing visual or audio contact with him. Uebel parked his motorcycle in front of Crawley's apartment, and

Deputies Denning and Armstrong parked across the street from it. When Uebel entered the apartment, Deputies Denning and Armstrong lost visual contact with him but listened to the events in real time through the recording device.

[4] Uebel entered Crawley's apartment and, after briefly speaking with him, gave him $85 in buy money in exchange for what was later determined to be 1.69 grams of methamphetamine. Uebel then left the apartment and drove to the post-buy location, where he gave Deputy Armstrong the methamphetamine he had just purchased. Deputies Denning and Armstrong again searched Uebel and his motorcycle for contraband and money, finding none.

[5] Two days later, on February 23, Uebel set up another buy with Crawley for half of an eight ball of methamphetamine for $85 and told police about the buy. Similar to before, Uebel met with police for a pre-buy interview and search. Deputies Denning and Spry searched Uebel's person and motorcycle, gave him $85 in buy money, and fitted him with a recording device. Uebel then drove to Crawley's apartment. Deputy Spry and Deputy Ben Flint followed Uebel, maintaining visual and audio contact with him until he arrived at Crawley's apartment.

[6] Crawley was not home when Uebel got there, so Uebel waited outside. Deputies Spry and Flint watched Crawley enter the apartment and heard Uebel and Crawley engage in conversation in real time through the recording device. Uebel gave Crawley $85 in buy money in exchange for what was later determined to be 1.68 grams of methamphetamine. Uebel then left the

apartment and met Deputies Spry and Flint at the post-buy location. There, Uebel gave Deputy Spry the methamphetamine he had just purchased. Deputies Spry and Flint again searched Uebel and his motorcycle for contraband and money, finding none.

[7] The State charged Crawley with two counts of Level 4 felony dealing in methamphetamine, two counts of Level 6 felony possession of methamphetamine, and one count of Level 6 felony maintaining a common nuisance. At the jury trial, Uebel testified he purchased methamphetamine from Crawley on February 21 and 23, 2018. Uebel also testified the State dismissed his possession charges in exchange for his work as a confidential informant in this case. In addition, the State admitted into evidence the audio recordings of the controlled buys. *See* Exs. 1, 2. A court reporter had prepared transcripts of the audio recordings, and the State asked the trial court if the jury could use them as an aid while listening to the recordings.[1] Tr. pp. 104, 168. Crawley objected on grounds there was "absolutely no foundation that's been laid for the transcript as far as who did it." *Id.* at 104, 168. The State responded the court reporter who prepared the transcripts attached the following "Certificate" at the end of each transcript:

> I . . . do hereby certify that the above and foregoing, is a true and accurate transcript, typed to the best of my ability, of the audio of

---

[1] It is unclear from the record whether defense counsel knew about the transcripts before the State asked the trial court if the jury could use them as an aid. On appeal, Crawley does not say one way or the other.

a controlled buy as provided to me. I am not related to, employed by, or interested in any of the parties in this action.

Ex. 1A, p. 40; Ex. 2A, p. 61. The trial court found the court reporter's "Certificate" made the transcript "valid" and ruled the jury could use the transcripts while listening to the recordings. Tr. p. 170. Before the recordings were played for the jury, the trial court gave the following admonishment:

> [A] transcript should normally be used only to assist the jury as it listens to an audio tape, but there may be a need for transcripts due to inaudibility of portions of the tape. In such a case the jury should be instructed to rely on what they hear rather than on what they read when there is a difference.

*Id.* at 106, 171. The transcripts were not admitted into evidence; rather, they were only used by the jury when listening to the recordings.

During Deputy Denning's testimony, the State asked him if he could "ascertain when the deal, the transaction took place" on the recording of the February 21 controlled buy. *Id.* at 109. Crawley objected as follows:

> I mean [the jury has] heard the tape. They've had a transcript to aid them in hearing the tape. We don't need Detective Denning to give his own interpretation as to what the jurors already heard.

*Id.* The trial court overruled Crawley's objection, and Deputy Denning testified he believed the deal took place when Uebel said, "Man, I never thought it would come to the day where I'd have to pay 85 dollars for a ball. You know, what I mean?" *Id.* at 111-12. Likewise, during Deputy Spry's testimony, the

State asked him if he "believe[d] [he was] able to hear when the deal took place" on the recording of the February 23 controlled buy. *Id.* at 172. Crawley again objected, and the court again overruled his objection. Deputy Spry then testified he believed the deal took place when Crawley said "Yeah, it's 1.7" and Uebel referenced $85. *Id.* at 172-73.

[9] The jury found Crawley guilty as charged. The trial court merged the possession counts into the dealing counts and sentenced Crawley to twelve years for each dealing conviction and one year for the maintaining-a-common-nuisance conviction, to be served concurrently.

[10] Crawley now appeals.

# Discussion and Decision

## I. Transcript

[11] Crawley first contends the trial court erred in letting the jury use the transcripts while listening to the audio recordings. A transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the recording. *Small v. State*, 736 N.E.2d 742, 748 (Ind. 2000) (citing *Bryan v. State*, 450 N.E.2d 53, 59 (Ind. 1983)). "If accuracy remains an issue, a foundation **may** first be laid by having the person who prepared the transcripts testify he has listened to the recordings and accurately transcribed their contents." *Bryan*, 450 N.E.2d at 59 (emphasis added, quotation omitted). Because the need for a transcript is generally caused

by two circumstances—inaudibility of portions of the recording or the need to identify speakers[2]—it may be appropriate, in the sound discretion of the trial court, to furnish the jury with a transcript to assist it while listening to the recording. *Small*, 736 N.E.2d at 748. The court should instruct the jury to rely on what it hears rather than on what it reads when there is a difference. *Id.*

[12] Crawley argues "the State did not provide any foundation regarding accuracy of the transcripts other than that there was a certification provided by the Court reporter at the conclusion of the transcript." Appellant's Br. p. 13. Crawley, however, cites no authority that says a court reporter's certification that a transcript is "accurate" is not a sufficient foundation to allow a jury to use a transcript as an aid while listening to a recording. But even if the court reporter's certification did not provide a sufficient foundation, Crawley has identified no inaccuracy in the transcripts. *See Bryan*, 450 N.E.2d at 60 (finding no reversible error because "neither at trial nor on appeal has [the defendant] identified the typed statements in the transcript that are not identical with the conversation."). The trial court did not err in letting the jury use the transcripts while listening to the recordings.

---

[2] Crawley notes the transcripts in this case do not identify the speakers, but he does not explain how, if at all, this prejudiced him.

# II. Officers' Testimony

[13] Crawley next contends the trial court erred in allowing Deputies Denning and Spry to testify when they believed the drug deals took place on the recordings in violation of Indiana Evidence Rule 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception; and
>
> (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

Specifically, Crawley claims their testimony went "beyond" assisting the jury with drug-dealing terminology and concepts and amounted to "pure speculation as to what [was] going on in a room based on audio recordings," unduly influencing the jurors. Appellant's Br. p. 12.

[14] The State responds that even if the trial court erred in allowing this testimony, the error is harmless. We agree. An error is harmless when it results in no prejudice to the "substantial rights" of a party. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018). To determine whether an error in the introduction of evidence affected the defendant's substantial rights, we assess the probable impact of that evidence upon the jury considering all the other evidence that was properly presented. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). If we are satisfied the conviction is supported by independent evidence of guilt such that there is no substantial likelihood that the challenged evidence contributed to the verdict,

the error is harmless. *Id.* As detailed below in the Section III, there is substantial independent evidence Crawley delivered methamphetamine to Uebel on both occasions, including Uebel's own testimony. Notably, Crawley did not file a reply brief responding to the State's harmless-error argument. Accordingly, we find any error is harmless.

# III. Sufficiency of the Evidence

[15] Finally, Crawley contends the evidence is insufficient to support his dealing convictions. When reviewing sufficiency-of-the-evidence claims, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We will only consider the evidence supporting the verdict and any reasonable inferences that can be drawn from the evidence. *Id.* A conviction will be affirmed if there is substantial evidence of probative value to support each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[16] Crawley argues the State failed to prove he delivered methamphetamine to Uebel. Uebel testified he purchased methamphetamine from Crawley on February 21 and 23, 2018, and gave the methamphetamine to the officers after each buy. Tr. pp. 32-33, 39. In addition, the officers testified they searched Uebel before and after each controlled buy. The officers kept Uebel in constant visual contact as they drove to and from Crawley's apartment and listened in real time through the recording device on Uebel. Crawley acknowledges Uebel's testimony he purchased methamphetamine from him on February 21

and 23; however, he claims it is "self-serving," as Uebel had "a great deal to gain" with "the need to produce results."[3] Appellant's Br. p. 16. The jury heard all the testimony, including Uebel's testimony about getting his charges dismissed in exchange for his work as a confidential informant in this case, and found Crawley guilty. Crawley's argument is merely a request for us to reweigh the evidence, which we cannot do. We therefore affirm Crawley's dealing convictions.

[17]   Affirmed.

Brown, J., and Pyle, J., concur.

---

[3] Crawley does not claim Uebel's testimony was "incredibly dubious." *See Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015).